RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0275P (6th Cir.)
File Name: 04a0275p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: FORD MOTOR
COMPANY SECURITIES
LITIGATION, Class Action.

———————————

PUBLIC SCHOOL TEACHERS'
PENSION AND RETIREMENT
FUND OF CHICAGO;
INTERNATIONAL
BROTHERHOOD OF
ELECTRICAL WORKERS,
LOCAL 98; JOSEPH SELLIMAN;
OHIO TUITION TRUST
AUTHORITY,

      *Plaintiffs-Appellants,*

*v.*

FORD MOTOR COMPANY, et
al.,

      *Defendants-Appellees.*

No. 02-1670

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 00-74233; 00-74247; 00-74324; 00-74667;
00-74685; 00-75091; 00-75110—Arthur J. Tarnow,
District Judge.

Argued: September 11, 2003

Decided and Filed: August 23, 2004

Before: KENNEDY, GUY, and DAUGHTREY, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** William S. Lerach, LERACH, COUGHLIN, STOIA & ROBBINS, San Diego, California, for Appellants. Stuart J. Baskin, SHEARMAN & STERLING LLP, New York, New York, for Appellees. **ON BRIEF:** William S. Lerach, Eric A. Isaacson, LERACH, COUGHLIN, STOIA & ROBBINS, San Diego, California, Edward M. Gergosian, Matthew P. Montgomery, BARRACK, RODOS & BACINE, San Diego, California, for Appellants. Stuart J. Baskin, Jerome S. Fortinsky, SHEARMAN & STERLING LLP, New York, New York, for Appellees.

———————————

## OPINION

———————————

KENNEDY, Circuit Judge. Lead plaintiff, Public School Teachers' Pension and Retirement Fund of Chicago (Pension Fund), and named plaintiffs, Ohio Tuition Trust Authority, Joseph Selliman, and International Brotherhood of Electrical Workers, Local 98, (collectively "plaintiffs") filed this consolidated class action complaint against Ford Motor Company, Inc. on behalf of all investors who purchased Ford common stock between March 31, 1998 and August 31, 2000 ("class period"), alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (2002), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (2002). This class

action surrounds allegations that during the class period which ended ten days after the announcement of a joint voluntary recall by Ford and Bridgestone/Firestone, Inc. ("Bridgestone") of Bridgestone ATX tires ("ATX tires") on Ford Explorer vehicles: 1) Ford omitted material information concerning the dangerousness of Ford Explorer vehicles equipped with ATX tires when making statements about the quality and safety of Ford Explorers, thereby making them false, incomplete, or misleading; and 2) Ford's financial statements during the period are presumptively false because Ford failed to include material information concerning the contingent liability of related lawsuits and recalls in violation of Generally Accepted Accounting Principles ("GAAP"). The district court dismissed the action for failure to state a claim under § 20(b) of the Securities Act and Rule 10b-5. Plaintiffs appeal from the judgment of dismissal with prejudice and the denial of their motion to set aside the judgment and permit them to file an amended complaint.

## I. Procedural History

On January 4, 2001, the district court consolidated a series of class actions against Ford for alleged securities fraud. On February 14, 2001, the district court appointed Pension Fund as lead plaintiff and directed Pension Fund to file a consolidated complaint. The consolidated complaint ("complaint") was filed March 16, 2001. On May 15, 2001, Ford moved to dismiss the complaint with prejudice[1] pursuant to Federal Rule of Civil Procedure 8, Federal Rule of Civil Procedure 12(b)(6), and/or the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(2). Both parties were permitted to file fifty-page briefs and to submit full copies of the exhibits relied upon in the complaint. On October 16, 2001, extensive oral arguments

were held on the motion to dismiss. At the hearing, the district court, over the defendant's objections, permitted plaintiffs to present and rely on additional exhibits and argue their support for plaintiffs' allegations of Ford's scienter. On December 10, 2001, the district court granted Ford's motion to dismiss with prejudice, and entered judgment in favor of Ford. Specifically, the district court held that the plaintiffs' complaint failed to state a claim under § 10(b) of the Securities Act and Rule 10b-5[2] in violation of Federal Rule of Civil Procedure 12(b)(6); that plaintiffs failed to allege any legally cognizable untrue statements or omission of material fact; and that the allegedly false statements praising the quality or safety of Ford products failed to state a claim because they are "vague, corporate puffery or accurate." With respect to the alleged GAAP violation, the court held that GAAP did not require Ford to disclose potential future recall costs because "[t]he tire manufacturer is responsible for a tire recall" under 49 U.S.C. § 30120(b), because "Ford was not required to disclose such unforeseeable information, and Ford had no independent duty to disclose potential recall costs." As an independent ground for its decision, the district court, after examining the non-exhaustive list of factors typically relevant to the pleading of scienter contained in *Helwig v. Vencor*, Inc. 251 F.3d 540 (6th Cir. 2001), also held that plaintiffs failed to plead a strong inference of Ford's scienter, as the PSLRA's heightened pleading requirements mandate. On December 22, 2001, plaintiffs filed a motion to amend the judgment and for leave to amend their complaint together with a proposed amended complaint ("PAC").

On April 15, 2002, the district court denied plaintiffs' motion on the ground that plaintiffs had not met any of the

---

[1] Ford asserted the complaint should be dismissed with prejudice since it was an amended complaint.

[2] Section 10(b) of the Securities Act and Rule 10b-5 promulgated thereunder prohibits "fraudulent material misstatement or omissions in connection with the sale or purchase of a security."

grounds permitting the district court to amend its judgment under Federal Rule of Civil Procedure 59(e).

## II.  District Court's Dismissal with Prejudice under Rule 12(b)(6)

We review the district court's dismissal on the pleadings under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Bovee v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).  We "must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of . . . [his] claims that would entitle . . . [him] to relief."  *Id.*  "When an allegation is capable of more than one inference," we must construe that allegation in the plaintiff's favor.  *Helwig,* 251 F.3d at 553. Yet, we "need not accept as true legal conclusions or unwarranted factual inferences."  *Bovee,* 272 F.3d at 361 (internal quotation marks and citation omitted).

To succeed on a § 10(b)(5)/Rule 10b-5 claim, plaintiffs must establish: "(1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and (5) proximately causing them injury." *Helwig,* 251 F.3d at 554 (citation omitted).

Adding to the Federal Rules of Civil Procedure 9(b) requirement that fraud must be stated with particularity, the PSLRA mandates that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  In addition, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (2001).  The

requisite state of mind is scienter, a "mental state embracing intent to deceive, manipulate or defraud."  *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976)) (internal quotation marks omitted).  In particular, this court has held that, concerning "statements of present or historical fact," *Helwig,* 251 F.3d at 552,  plaintiffs may satisfy the scienter pleading requirement "by alleging facts giving rise to a strong inference of recklessness."[3]  *In re Comshare*, 183 F.3d at 549.  "[R]ecklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care.  While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Id.* at 550 (internal quotation marks and citation omitted).  However, a plaintiff cannot satisfy the scienter pleading requirement "by alleging facts *merely* establishing that a defendant had the motive and opportunity to commit securities fraud." *Id.* at 549 (emphasis added) (noting that, although facts concerning motive and opportunity may be relevant to pleading circumstances from which one could infer a strong inference of fraudulent scienter "and may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct, the bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter").  Under the PSLRA's "*strong* inference" requirement, plaintiffs "need not foreclose all other characterizations of fact," but their factual allegations, in creating an inference of scienter that is "strong," must rely on "the most plausible of competing inferences." *Helwig,* 251 F.3d at 553 ("Strong inferences . . .

---

[3]Under the PSLRA's "safe harbor" provision for forward-looking statements, 15 U.S.C. § 78u-5(c)(1), a defendant is liable for such statements only if they were material; if the defendant "had actual knowledge that the statements were false or misleading"; and if the defendant did not identify the statements as forward-looking or insulate them with "meaningful cautionary language." *Helwig*, 251 F.3d at 547-548.

involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact.").

### A. Plaintiffs' Allegations

In 1988-89 Ford designed the Explorer to replace the Bronco, a line of sports utility vehicles (SUV).[4] Plaintiffs have alleged that the Explorer was not thoroughly tested, and that it had problems with its suspension and high-center of gravity. The Explorer was sold with ATX tires of "C" heat/temperature rating. While safe, this is the lowest rating of the National Highway Traffic Safety Administration (NHTSA) Uniform Tire Quality Grading System. This rating has less ability to resist heat build-up than "A" and "B" tires. Ford recommended a tire inflation of 26 psi. This was less than the tire pressure recommended by Bridgestone for C-rated tires. Low tire pressure decreases a tire's ability to resist heat – a cause of tire separation. Over 6,000,000 Explorers were sold by the end of the class period.

As of 1993, five lawsuits had been filed against Ford and Bridgestone for tire separation failures of ATX tires on Explorers. By 1996, fifteen suits were filed. By 1999, the end of the class period, 50 such lawsuits had been filed against Ford for injuries or deaths from Explorer crashes. Ford and Bridgestone, in settling suits, obtained secrecy agreements which required non-disclosure of discovery materials and return of any discovery documents. In addition, there were complaints due to tire failure made to Bridgestone.

---

[4]While there was no discovery in this case, Ford's conduct and knowledge during the class period had been explored in depth in Congressional hearings held before the class complaint was filed and in depositions in a product liability case, permitting plaintiffs to be quite specific in their allegations with respect to both misrepresentations and scienter in their 77-page and 154-paragraph complaint.

In 1996, Bridgestone quietly replaced ATX tires in Arizona related to ATX tire failure.

In 1998, Ford received a number of complaints about ATX tires from drivers of Explorers in Saudi Arabia. Ford referred those to Bridgestone, which posited that they were due to driving conditions there -- high speeds, off-road driving, high temperatures -- and not to the tires.

When complaints continued, Ford replaced ATX tires in Saudi Arabia and other Persian Gulf countries with "C" tires from another manufacturer which appeared to take care of the tire separation problems. At about the same time, similar complaints were made by drivers in Venezuela. There, too, the problems were attributed to specific local conditions; namely, driving at speeds of up to 100 miles-per-hour for hundred-mile stretches and to the heat. Many of the tires in Venezuela were manufactured by a Bridgestone factory there. At Ford's direction, ATX tires on vehicles in Venezuela were replaced with ATX tires with a nylon cap. Additional strength permitted raising the recommendation for inflation pressure to 30 psi. Ford also made suspension changes and different shock absorbers for Explorers being sold in Venezuela. Bridgestone refused to pay for the changes, blaming the Explorer's suspension system. Plaintiffs allege that the failure of Ford to reveal that it was experiencing these problems with its Explorers with ATX tires in the Middle East and Venezuela made all statements about the quality of Ford products in general, false statements. The Venezuelan government is now prosecuting Ford and Bridgestone for their alleged collusion in hiding the defective nature of the Explorer equipped with ATX tires.

### B. Actionable Misrepresentation or Omission

The PSLRA mandates that, where plaintiffs allege that the defendant "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make

the statements made, in light of the circumstances in which they were made, not misleading," plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u-4(b)(1). "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). Yet, "even absent a duty to speak, a party who discloses material facts in connection with securities transactions 'assume[s] a duty to speak fully and truthfully on those subjects.'" *Helwig*, 251 F.3d at 561 (quoting *Rubin v. Schottenstein*, 143 F.3d 263, 268 (6th Cir. 1998)). There is no general or independent duty to disclose "soft information," information that is uncertain and not objectively verifiable such as "predictions, matters of opinion, and asset appraisals." *Helwig*, 251 F.3d at 559. However, even with "soft information," a defendant may choose silence or speech based on the then-known factual basis, but it cannot choose half-truths. *Helwig*, 251 F.3d at 561, 564 (holding that a company may remain silent regarding soft information "until the fullness of time and additional detail permit confident disclosure," but it may not volunteer material, soft information despite its uncertainty and then escape liability for that information's misleading or false nature).

Plaintiffs allege, not that Ford had an independent duty to disclose the dangerousness of ATX equipped Explorers or the possible loss contingency regarding it, but that Ford made misrepresentations or statements that are misleading absent the disclosure of such material information. In their complaint, plaintiffs allege that Ford made many statements about Ford having experienced earnings improvement and the Explorer having set various sales records that were misleading because Ford knew that such profits and sales were due to its sale of a defective product and that the eventual public revelation of the defect would affect adversely

Ford's financial status. However, we have held that "[t]he disclosure of accurate historical data does not become misleading even if . . . [the company might predict] less favorable results . . . in the future." *In re Sofamor Danek Group*, 123 F.3d 394, 401 n.3 (6th Cir. 1997). Because plaintiffs have not alleged the historical inaccuracy of Ford's financial and earnings' statements, such statements are not misrepresentations.

A misrepresentation or an omission is material only if there is a substantial likelihood that "a reasonable investor would have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made available.'" *In re Sofamor*, 123 F.3d at 400 (quoting *Basic, Inc.*, 485 U.S. at 232). We may properly dismiss a complaint on the ground that the alleged misrepresentations or omissions are immaterial only if "they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance." *Helwig*, 251 F.3d at 563 (internal quotation marks, citation and emphasis omitted). "Immaterial statements include vague, soft, puffing statements or obvious hyperbole" upon which a reasonable investor would not rely. *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 897 (8th Cir. 2002). Statements that are "mere puffing" or "corporate optimism" may be forward-looking or "generalized statements of optimism that are not capable of objective verification." *Grossman v. Novell, Inc.* 120 F.3d 1112, 1119 (10th Cir. 1997). In their complaint, plaintiffs allege that Ford made many misleading statements regarding its commitment to quality, safety, and corporate citizenship, such as: 1) "[A]t Ford quality comes first."; 2) "We aim to be the quality leader"; 3) "Ford has its best quality ever"; 4) "Ford is "taking across-the-board actions to improve . . . [its] quality."; 5) Ford has made "quality a top priority"; 6) "Ford is a worldwide leader in automotive safety"; 7) Ford has made "quality a top priority"; 8) Ford is "designing safety into . . . [its] cars and trucks" because it wants its "customers to feel safe and secure

in their vehicles at all times"; 9) Ford "want[s] to make customers' lives . . . safer"; 10) Ford has "dedicated . . . [itself] to finding even better ways of delivering . . . safer vehicles to [the] consumer"; 11) Ford "want[s] to be clear leaders in corporate citizenship"; 12) Ford's "greatest asset is the trust and confidence . . . [it] has earned from . . . [its] customers"; 13) Ford "is going to lead in corporate social responsibility." Such statements are either mere corporate puffery or hyperbole that a reasonable investor would not view as significantly changing the general gist of available information, and thus, are not material, even if they were misleading. All public companies praise their products and their objectives. Courts everywhere "have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace – loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996); *see also Nathenson v. Zonagen, Inc.* 267 F.3d 400, 404, 419 (5th Cir. 2001) ("broad, general statements" about "positive" and "statistically significant" test results of a new drug were puffery); *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 58 (2d Cir. 1996) (corporation's self-praise about its business strategy is "not considered seriously by the marketplace and investors in assessing a potential investment").

The same is true with respect to statements such as (1) "We want to ensure that all our vehicles have world-class quality[,] . . . developing cars and trucks that are *defect-free*" and (2) "We're also insisting our suppliers maintain Ford's stringent quality standards." What Ford "wants" or is insisting its suppliers do would not be interpreted by an investor as a representation that its products achieve that objective or its suppliers maintain the quality standards it asks. Yet, plaintiffs maintain that this statement was false

because Ford permitted Bridgestone, its largest tire supplier for the Explorer, Ford's most important product, "to supply defectively designed and/or improperly manufactured ATX tires . . . [that] utilized bad, out-of-specification or inappropriate raw materials, and had only a 'C' heat/temperature rating."

Plaintiffs allege only three affirmative statements relating specifically to the safety of Ford Explorers with ATX tires. The first two are related. In February 2000, in response to an inquiry from a Houston, Texas television station regarding three specific rollover accidents involving Explorers with ATX tires, a Ford public affairs manager is alleged to have said that the "[F]ord Explorer is an extremely safe and thoroughly engineered vehicle that, as substantiated by NHTSA data, performs as well as or better than peer vehicles in its class. . . ..Ford is very, very proud of the Explorer and strongly believes that the vehicle is extremely safe when operated properly."

In response to either the same or another inquiry regarding Texas accidents, a public affairs manager stated "these accidents clearly resulted from driver error and had nothing to do with the design of the vehicle."

Ford asserts as to these allegations, first, that they are statements of opinion, that plaintiffs offer no basis to believe Ford was not proud or otherwise did not believe the opinions expressed, and that there is, therefore, no basis to conclude that Ford knew they were false or made recklessly. Further, with respect to the first statement, it was a comment on the vehicle itself since that is what is measured by NHTSA. In the instance of the second statement plaintiffs have failed to allege with particularity that the Ford spokesman or Ford knew that the statements were false or made with the recklessness required under the PLRA. There are no allegations with respect to the actual cause of the accidents referred to or further identifying the accidents referred to.

The third statement was made on August 1, 2000, after NHTSA had opened an investigation into the safety of Bridgestone tires. In response to two safety groups urging Ford to recall Ford Explorers equipped with ATX tires, Ford responded in a written statement that it was "extremely satisfied with the safety record of their vehicles." Since the recall of tires was legally the responsibility of Bridgestone under 49 U.S.C. § 30120(b), the statement, as fairly read, is the expression of Ford's opinion as to the safety record of the vehicle itself. As statements of the speakers' opinions, these statements are actionable only "if the speaker does not believe the opinion and the opinion is not factually well grounded." *Helwig*, 251 F.2d at 562. Plaintiffs did not allege facts that demonstrate the speaker did not believe the statements they made.[5]

### III. GAAP

The complaint alleges that Ford "lied when it issued its financial statements when it failed to account for the possibility of future recall costs in the United States as a loss contingency" under GAAP. *See generally* RESEARCH AND DEV: ARRANGEMENTS, Statement of Financial Accounting Standards No. 5, §§ 8-13 (Financial Accounting Standards Bd. 1975).

In their brief on appeal, plaintiffs argue only that "[e]ven if the cost of replacing the tires [in the United States] could not reasonably be estimated, GAAP required that Ford disclose the nature of the liability if it was reasonably possible." We

---

[5] While Mr. Nasser, President of Ford, stated at a later time that, in his judgment, there was more than driver error involved, that was a judgment made in retrospect after the recall and after he had the information brought out in the congressional hearings. Plaintiffs do not allege any specific fact about these specific accidents that establish they were not due to driver error or, if they were, that the speaker or Ford knew otherwise *at the time.*

agree with Ford that the future recall costs that Ford agreed voluntarily to pay did not need to be disclosed in prior financial statements since no asset had been diminished nor had a liability been incurred at the date of the financial statements. Moreover, as the district court found, the tire company was responsible for the recall of the tires under 49 U.S.C. 30120(b). Thus, it would be reasonable to expect the cost of replacing any tires would be on Bridgestone. While Bridgestone did not pay costs of tire replacement in Saudi Arabia or Venezuela, that did not mean it would not in the United States where it could be expressly mandated to do so by NHTSA under federal law. Further, plaintiffs have not pleaded sufficient facts to give rise to the strong inference of scienter that is required under the PSLRA.

Ford also points to disclosures it did make in its 1999 10-K stating that federal authorities had 28 investigations of alleged safety defects and warning that the costs of such recall campaigns could be substantial. It also disclosed that investigation arising out of safety defects and other problems could "require very large expenditures." Similar disclosures are made in earlier 10-Ks.

In *In re Sofamor*, plaintiff alleged the company's financial statements were "incomplete and misleading" because defendant knew its product was defective and being sold for an improper use, and should have disclosed the hazard of that misuse and advised the public of likely intervention by regulators. We held that there was no duty to disclose either the hazards of the product or possible regulatory action, or predict its failure losses where such predictions were not "substantially certain." 123 F.3d at 401-02.

Plaintiffs fail to allege any facts that establish that anyone at Ford thought or anticipated a massive recall of tires was necessary in the United States before the recall was announced.

## IV.   MOTION TO FILE AMENDED COMPLAINT

Plaintiff filed a motion to set aside the judgment and to file an amended complaint under Fed. R. Civ. P. 15(a) and Fed. R. Civ. P. 59(e), together with the proposed amended complaint and a brief in support. Ford filed a response brief. The district court refused to permit the filing of the amended complaint, finding no showing of (1) an intervening change in controlling law; (2) evidence previously unavailable; (3) clear error of law in its prior opinion; or (4) manifest injustice.

The court recognized that plaintiffs sought to file under Fed. R. Civ. P. 15(a), as well as 59(e), but, noting that plaintiffs had been permitted to present additional exhibits relating to scienter during the oral argument on the motion to dismiss, and that a court does not abuse its discretion in denying a Rule 59(e) motion when it is premised on evidence that the party had in its control prior to the original judgment, it denied the motion.

We agree that the amended complaint presents the same legal theories as the previously dismissed complaint. While better organized, the substance of the allegations of Ford's knowledge, of scienter, and of the legal theories are no different, except for a few additional advertisements regarding Ford products, generally more complete Ford correspondence files regarding the Middle East and Venezuela, and two expert opinions as to whether plaintiffs had stated a cause of action under PLSRA and GAAP.

While arguing that the motion to amend was properly decided under Rule 59(e), Ford urges us to examine the amended complaint, which relies on the same legal theories and basic facts as the original complaint on the grounds that granting the motion would have been futile and then should have been decided under Rule 15(a) as well. The proposed amended complaint's allegations with respect to events in

Saudi Arabia and Venezuela are based on the attached exhibits of all the Ford internal documents regarding the problems there. The additional allegations, as well as the exhibits, confirm Ford's assertion that the cause of the problems appeared to be largely related to the driving conditions in those countries; namely, the very hot temperatures, driving 100 miles-per-hour for a hundred miles, and driving off road. While Ford personnel in Saudi Arabia believed the problem was due to Bridgestone tires (since Explorers with Goodyear tires did not have tire separation problems), Ford management in the United States relied on Bridgestone's explanations.

While Bridgestone refused to pay for the additional expense of caps or replacements tires in Venezuela, there is nothing in the additional allegations that indicates any knowledge on the part of Ford that there was any such problem in the United States or that Bridgestone would not comply with 49 U.S.C. § 30120(b) and be responsible for any recall.

The proposed complaint references two internal emails from Glenn R. Drake, the National Business Operations Manager for Ford International Business Development, to various other U.S.-based management members in late January and early March of 1999, respectively, expressing Drake's doubt about whether Bridgestone, which had stated that improper repairs on the ATX tires had caused the Explorer rollovers", was lying to avoid liability and requesting Ford's independent investigation into the matter. However, there is no allegation that any such investigation was undertaken.

The only other new allegations are "expert opinions" by an accountant and an attorney expressing their opinions on whether plaintiffs have stated a cause of action. Whether a complaint states a cause of action is a question for the court. We do not see any reason to change our conclusions because of any arguments made in either opinion.

In short, because nothing in the amended complaint cures the failure to plead "with particularity facts giving rise to a strong inference that defendant acted with the required state of mind," the district court did not abuse its discretion in denying the motion to amend, whether under 15(a) or 59(e). Even if we were to find that it abused its discretion, the error would be harmless. *Jet, Inc. v. Sewage Aeration Sys.,* 165 F.3d 419 (6th Cir. 1999). As we noted in an earlier case, allowing the plaintiffs to file the proposed amended complaint that contains the same deficiencies as the dismissed complaint would frustrate the purpose of the PSLRA. See *Miller v. Champion*, 346 F.3d 660, 692 (6th Cir. 2003).

## V.  CONCLUSION

For the reasons stated above, we affirm the district court's order granting Ford's summary judgment motion for failure to state a claim. We also affirm the district court's denial of Plaintiffs' motion to set aside the judgment and permit them to file an amended complaint.