The GEORGE NELSON
FOUNDATION

v.

MODERNICA, INC.

Civil Action No. 13–3427.

United States District Court,
S.D. New York.

Signed March 12, 2014.

Jessica Megan Garrett, Michael F. Sarney, Katten, Muchin, Rosenman, LLP, New York, NY, Carolyn M. Passen, William J. Dorsey, Katten, Muchin, Rosenman, LLP, Chicago, IL, for The George Nelson Foundation.

David Glenn Ebert, Mioko Catherine Tajika, Ingram, Yuzek, Gainen, Carroll & Bertolotti, LLP, New York, NY, Victor K. Sapphire, Michelman & Robinson LLP, Encino, CA, for Modernica, Inc.

## MEMORANDUM RE MOTION TO DISMISS

BAYLSON, District Judge.

"What's in a name? That which we call a rose By any other name would smell as sweet.[1]

The mystery of a name drives the plot in Puccini's opera *Turnadot*. In the Grimm Brothers' fairy tale about Rumpelstiltzken, correctly guessing his name releases the promise he had extracted from a young maiden that she would give him her first born child. Notwithstanding Shakespeare's question, names are important.

Common law courts have long recognized that a person or entity can acquire a property right to a name by creating a protectable interest through use in commerce, and our Constitution, of course, gave Congress the power to enact laws to protect intellectual property.

This case presents an issue centered around Plaintiff's allegations that Defendant has infringed on its name or, in legal parlance, its "mark."

According to the complaint, George Nelson was an American furniture designer who operated a design studio in New York from 1947 to 1986, and designed chairs, clocks, desks, lamps, and other furnishings that were continuously sold under the GEORGE NELSON and NELSON name or "marks" since 1947. Plaintiff does not allege a registered trademark, but instead asserts a common-law right to the marks GEORGE NELSON and NELSON based on its continuous use of the marks in connection to furniture and accessories designed by George Nelson.

The complaint alleges Defendant has sold products under the names George Nelson Bubble Lamps and Half Nelson Table Lamp, without permission from Plaintiff.

Plaintiff's Complaint alleges trademark infringement (Counts I & IV), false designation of origin (Count II), trademark dilution (Count III), common law unfair competition (Count V), violation of New York General Business Law §§ 349 & 360–l (Counts VI & VII), and seeks cancellation of Defendant's registration of the marks NELSON and GEORGE NELSON. (ECF No. 1). Plaintiff seeks injunctive relief, actual damages for all profits and advantages acquired through use of the mark, treble damages under 15 U.S.C. § 1117, money sufficient for corrective advertising, and punitive damages.

Defendant filed a motion to dismiss the complaint. (ECF No. 18). The Court heard oral argument on the Motion to Dismiss on February 25, 2014.

### I. THE PARTIES' ARGUMENTS

1. Trademark infringement

Defendant contends the complaint fails to state a claim for trademark infringement because it does not sufficiently allege continued use in commerce, and it fails to identify the geographic scope. Defendant also contends it sells genuine goods, so there can be no consumer confusion. Plaintiff responds its complaint does allege continued use in commerce, the complaint alleges sales of the infringing products in the same retail stores as licensed products, and responds that genuineness is an alternative theory of infringement, not a failure to state a claim.

---

**1.** William Shakespeare, *Romeo and Juliet* act 2, sc. 2.

Finally, Defendant contends Plaintiff abandoned or failed to police its trademarks, so it does not have an enforceable interest. Plaintiff responds that the complaint alleges continued licensing of the marks and continued use of the marks in commerce.

### 2. Trademark Dilution

Defendant contends the complaint fails to state a claim for trademark dilution because it does not adequately allege the mark GEORGE NELSON is famous, but only alleges the person George Nelson is famous. Plaintiff responds the complaint alleges the marks acquired a secondary meaning that was famous. Defendant further contends the complaint fails to allege how Defendant's use has blurred or tarnished the mark. Plaintiff responds that Defendant's unlicensed use of the mark dilutes the mark for licensed goods.

### 3. Unfair Competition

Defendant contends the complaint fails to state a claim for unfair competition because the alleged facts do not support bad faith. Plaintiff responds that Defendant was aware of its senior use of the mark and adopted it with the purpose of capitalizing on the fame and goodwill built in the GEORGE NELSON marks.

### 4. Deceptive Acts or Practices

Defendant contends the complaint fails to state a claim for deceptive acts or practices because the complaint does not allege any consumer harm. Plaintiff responds the complaint alleges consumers are duped into spending large sums of money on lamps based on the misrepresentation that they are associated with or endorsed by George Nelson's successors in interest.

### 5. Cancellation of Trademarks

Defendant contends has no standing to bring a claim for cancellation of the marks because Plaintiff has no pecuniary interest in the marks. Plaintiff responds that it is the predecessor in interest to George Nelson, and owns the marks.

### 6. Laches, Acquiescence and Estoppel

Defendant contends Plaintiff's claims are barred by laches because Plaintiff failed to assert its rights for more than fifteen years. Plaintiff responds that laches is not a defense to intentional infringement, and laches is not obvious from the face of the complaint. Defendant further contends Plaintiff's failure to police its marks amounts to a misrepresentation, and its current claims are barred by estoppel. Plaintiff responds there was no communication or reliance, so estoppel cannot apply. Finally, Defendant argues Plaintiff acquiesced to Defendant's use and Defendant relied on that acquiescence in building its business. Plaintiff responds that it made no active representation to Defendant.

## II. ANALYSIS

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (dismissing the complaint) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support

the legal claims asserted. *Id.* at 1949, 1953.

Three months after the Supreme Court issued its opinion in *Iqbal,* the Second Circuit applied its holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009) (quoting *Iqbal,* 129 S.Ct. at 1949). In *Harris,* a physician whose license had been revoked filed of a pro se § 1983 and ADA complaint against the New York Department of Education. *Id.* at 69–70. The District Court for the Southern District of New York dismissed the complaint for failure to state a claim, and the physician appealed. *Id.* The Second Circuit reviewed the sufficiency of the physician's claim de novo, and affirmed the dismissal of the complaint. *Id.* In so doing, the Second Circuit applied the *Iqbal* two-step test: (1) ignoring conclusory legal statements, take all factual allegations in plaintiff's complaint as true, then (2) determine whether the complaint sets forth a plausible claim for relief. *Id.* at 71–72. Following *Harris,* the Second Circuit held "the pleading standard set out in *Iqbal* supersedes the 'general allegation' deemed sufficient" in earlier Second Circuit precedent. *Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010) (affirming the district court's dismissal).

## A. The Sapphire Declaration

■ As a preliminary matter, this Court will address Defendant's reliance on a number of exhibits attached to the Motion to Dismiss.

In support of its Motion to Dismiss, Defendant submitted the Declarations of Victor Sapphire and Frank Novak, both of which attached exhibits. In a January 30, 2014 hearing, the parties addressed the issue of whether and to what extent the Court could consider those exhibits. During the hearing, Defendant withdrew the Novak Declaration and its supporting exhibits to avoid conversion of the Motion to Dismiss into a Motion for Summary Judgment under FRCP 12(d). This Court requested that the parties submit supplemental briefing discussing whether and to what extent the Court could consider the Sapphire Declaration and its exhibits at the motion to dismiss stage.[2] Plaintiff submitted its Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss on February 6, 2014 (ECF 38), and Defendant submitted Supplemental Memoranda in Support of its Motion to Dismiss on February 13, 2014 (ECF 40), and February 28, 2014 (ECF 44).

The Sapphire Declaration attaches six exhibits, which consist of the following documents:

- *Exhibit A:* The George Nelson Foundation's U.S. Application Serial No. 85/921, 195 for the mark GEORGE NELSON in connection with "Floor lamps [and] Lamps," filed May 2, 2013.

- *Exhibit B:* U.S. Registration No. 3,463,818 for the mark GEORGE NELSON BY VERICHRON owned by Wen Chen K. Wu, filed July 27, 2007 and granted July 8, 2008.

- *Exhibit C:* Modernica's U.S. Registration No. 3,733,895 for the mark GEORGE NELSON in connection with "Electric lamps; Lamp shades;

**2.** Plaintiff's contention, in its Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss, regarding the effect of Defendant's withdraw of the Novak Declaration will not be discussed here. Rather, the Court addresses the substance of Defendant's Motion to Dismiss below, and does so without any consideration of the Novak Declaration.

[and] Lamps," filed May 29, 2009 and granted January 5, 2010.

- *Exhibit D:* Modernica's U.S. Registration No. 3,823,800 for the mark NELSON in connection with "Electric lamps; Lamp shades; [and] Lamps," filed May 29, 2009 and granted July 27, 2010.
- *Exhibit E:* Modernica's U.S. Registration No. 3,939,483 for certain lamp trade dress in connection with "Electric lamps; Lamp shades; [and] Lamps," filed May 29, 2009 and granted April 5, 2011.
- *Exhibit F:* Modernica's U.S. Registration No. 3,939,484 for certain lamp trade dress in connection with "Electric lamps; Lamp shades; [and] Lamps," filed May 29, 2009 and granted April 5, 2011.

Defendant cites the applications to show it has superior rights to the marks, and that Plaintiff did not oppose its trademark application for the use related to lamps. Defendant submits Plaintiff's trademark application for future use to show that Plaintiff has not used the marks in commerce, or that Plaintiff abandoned the marks.

At the January 30th hearing, Plaintiff acknowledged that Defendant could properly attach U.S. Patent and Trademark Office filings to a motion to dismiss. However, Plaintiff contends that the Court should not consider the exhibits at the motion to dismiss stage to the extent that Defendant offers them for the purpose of establishing the truth of its own assertions in contradiction of Plaintiff's allegations.

Defendant counters that the Court may take judicial notice of federal trademark registration and pending applications. Further, Defendant contends that, under the Lanham Act, federal registrations may be considered prima facie evidence of the validity of the registered marks, the ownership of the marks, and the registrant's exclusive right to use the registered marks in connection with the goods and services specified in the registration. Def.'s Supp. Br. in Supp. of Mot. to Dismiss at 4 (citing 15 U.S.C.A. § 1115).

Plaintiff acknowledged that the related trademark registrations and applications attached to the Sapphire Declaration are integral to the allegations in its Complaint. Tr. of Jan. 30, 2014 Hearing at 5:2–8; 8:23–25. The Court agrees and notes that, where public records are integral to a complaint, a court is permitted to take judicial notice of those records when considering a Rule 12(b)(6) motion. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007). However, a court can only take judicial notice of such records "to determine what statements [they] contained" but "not for the truth of the matter asserted." *Id.* (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991)) (emphasis omitted).

The Court therefore determines that it can take judicial notice of the Sapphire Exhibits and will consider them insofar as Defendant uses them to establish that the application and registrations were submitted and that they contain certain statements. However, at this stage in the pleadings, Second Circuit precedent and the Rules of Federal Civil Procedure prevent this Court from accepting the veracity of those statements as this Court does not consider them as conclusive rebuttal of Plaintiff's allegations.[3] However, they do

---

**3.** Defendant's reliance on the Lanham Act is misplaced. The Act makes no mention of trademark applications, and establishes only that a trademark registration can be used as prima facie evidence of a trademark's validity and ownership. However, as the Act makes clear, prima facie evidence can be rebutted. The motion to dismiss stage of pleading, prior

raise possible defenses, which will be addressed at a later stage in this litigation, following discovery.

## B. Trademark Infringement

■ A trademark is "any word, name, symbol, or device, or any combination thereof" used by a person or entity "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. "A plaintiff can establish a mark as distinctive by showing that the mark is 'inherently distinctive,' i.e., intrinsically capable of identifying its source, or by demonstrating that the mark has acquired 'secondary meaning.'" *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir.2006) (vacating denial of a preliminary injunction against the infringing use of an unregistered mark).

■ Section 43(a) of the Lanham Act prohibits any person from using in commerce, in connection with any goods, "any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a)(1). "The section protects unregistered trademarks from infringement." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir.2000) (reversing a grant of summary judgment for the defendants).

■ To state a claim for infringement of a common-law trademark a plaintiff must show (1) the mark is protected and (2) that the "defendant's use of a similar mark is likely to cause consumer confusion." *Louis Vuitton*, 454 F.3d at 115; *see also Playtex Products, Inc. v. Georgia–Pac. Corp.*, 390 F.3d 158, 161 (2d Cir.2004) (affirming the grant of summary judgment to defendants).

### 1. *Protectable Interest*

■ A leading Second Circuit case on trademark protection is Judge Friendly's opinion in *La Société Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir.1974). In *Jean Patou* the plaintiff, a French perfume manufacturer, sold its perfume in the United States under the mark SNOB for many years, earning millions of dollars in revenue. *Id.* at 1269–70. An American perfume manufacturer registered the SNOB mark in 1951, and because of this conflicting registration, U.S. Customs officials refused to allow the plaintiff to import its perfume. *Id.* The plaintiff sued to allow importation and for cancellation of the defendant's marks, among other relief. *Id.* The district court found the defendant's use was sufficient to establish a property right in the mark, even though the defendant only sold 89 bottles of the perfume, earning $600 in revenue over the course of twenty years. *Id.* The Second Circuit reversed the district court's finding that this minimal use was sufficient to support a protectable interest in the mark, but remanded to determine whether the plaintiff's claims were precluded by res judicata. *Id.* at 1272–76.

■ Judge Friendly succinctly described the concept of trademark protection as follows:

The user who first appropriates the mark obtains on [sic] enforceable right

to the exchange of any discovery, is not the appropriate time for the court to consider the

proper weight of these claims.

to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially.... The Supreme Court wrote in the *United Drug Co.* case, 248 U.S. at 97, 39 S.Ct. at 50:

"There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trademarks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not is mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business."

*Id.* at 1271 (quoting *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141 (1918)). "The user who first appropriates the mark may prevent others from using it, 'as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially.'" *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 440 F.Supp.2d 249, 272 (S.D.N.Y.2006) (quoting *Jean Patou*, 495 F.2d at 1274) (finding at trial insufficient evidence of use in commerce).

 In *Jean Patou* the Judge Friendly found the junior user[4] only sold perfume under the SNOB mark for the purpose of establishing and maintaining rights in the mark to exclude the plaintiff from the in-

dustry. *Id.* at 1273. This was not the kind of bone fide use required to established rights to the mark. *Id.* at 1273–74 ("There must be a trade in the goods sold under the mark or at least an active and public attempt to establish such a trade.").

In this case Defendant does not challenge the uniqueness of the mark. Defendant contends Plaintiff's complaint fails to allege it sold lamps under the GEORGE NELSON or NELSON marks, and that it did not do so continuously. The complaint alleges the marks have been "used consecutively for more than 60 years by The Foundation and its predecessors, generating hundreds of millions of dollars in sales." Complaint at ¶ 41.[5] Unlike the junior mark user in *Jean Patou*, the pleaded facts show the commercial use of the mark was bone fide, not merely to establish property rights in the mark. Moreover, Defendant does not assert the initial use was insufficient to establish rights to the mark, but instead asserts Plaintiff has failed to use the mark through the present period. This argument is more properly framed as a question of abandonment, rather than a failure to establish rights to the mark. The complaint sufficiently alleges use in commerce to support a claim Plaintiff established a protectable interest in the GEORGE NELSON marks.

## 2. *Geographic scope*

 Defendant next contends the complaint fails to plead the geographic scope of the use of the mark. Geographic scope is a limitation on the enforceability of a mark to locations where the Defen-

---

**4.** A junior user is a party whose use of the mark postdates another's use of the mark.

**5.** At oral argument on February 25, 2014, Plaintiff's counsel gave a more detailed account of Plaintiff's activities and use of the GEORGE NELSON marks. Although the

Court will deny Defendant's motion based solely on the Complaint, the explanation at oral argument provides a basis to allow the case to proceed without requiring an amended complaint, as discovery will provide Defendant with facts on these activities.

**646**

dant's use of the mark is confusingly similar. *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d Cir.2004) (affirming denial of a preliminary injunction). The complaint alleges licensed products have been sold under the NELSON marks "in the United States," Complaint at ¶ 13, and alleges the infringing use in New York and "throughout the United States." Complaint at ¶ 20. The complaint further alleges the infringing lamps are sold in "retail stores next to licensed products." Complaint at ¶ 21. Accordingly, the Complaint pleads facts which, if true, would show Defendant's use of the mark throughout the United States is likely to cause consumer confusion, at least in some geographic locations.

### 3. *Abandonment*

 Defendant contends the Court can conclude as a matter of law from Plaintiff's allegations and from attachments to the Sapphire Declaration that Plaintiff does not have a protectable interest because it abandoned the marks.

 To show abandonment, a defendant must show (1) non-use, and (2) an intent not to resume use. *Silverman v. CBS Inc.*, 870 F.2d 40, 47 (2d Cir.1989) (reversing the district court's finding of no abandonment after a bench trial). "Nonuse for 3 consecutive years shall be prima facie abandonment." 15 U.S.C. § 1127 (2006). Intent to resume must be in the "reasonably foreseeable future." *Id.* at 46. "[A]bandonment, being a forfeiture of a property interest, should be strictly

proved." *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) (affirming summary judgment for the defendants).

The complaint alleges products designed by George Nelson "have been continuously sold in the United States under the NELSON marks since 1947" through licenses granted by George Nelson's widow, a predecessor in interest to Plaintiff. Complaint at ¶¶ 13–14. The Court finds this allegation supports a claim for continued use. *See Dual Groupe, LLC v. Gans–Mex LLC*, 932 F.Supp.2d 569, 574 (S.D.N.Y. 2013) (denying a motion to dismiss because "[o]wnership rights in a trademark ... can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made ... by the licensee.") (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 18.46 (4th ed.2004)). Nothing in the complaint suggests the marks fell into disuse for a period of years.[6] Given Plaintiff's allegations, abandonment is an affirmative defense. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir.2007) (affirming summary judgment for the defendant). Accordingly, the Complaint sufficiently alleges continuous use, and alleges facts that are inconsistent with an intent to abandon.[7]

### 4. *Genuineness*

Defendant contends Plaintiff cannot state a claim for trademark infringement,

---

**6.** Defendant points to a trademark application for intent to use as evidence Plaintiff has not in fact used the marks in commerce. Sapphire Decl. Exh. A. First, it is unclear this filing demonstrates Plaintiff has not in fact used the marks in commerce. Even if this filling could disprove the facts alleged, it at most raises a question of fact not suitable for disposition on a motion to dismiss. The only

question before the Court is whether the complaint sufficiently alleges continuous use.

**7.** Ms. Nelson's licensing of the marks and assignment of the marks to Plaintiff in January 2013 shows a continued interest in the marks. There is no requirement to append licenses or assignment agreements to a complaint when facts are adequately plead.

because Defendant's lamps are genuine. Defendant cites to *TechnoMarine SA v. Jacob Time, Inc.* for this proposition. 905 F.Supp.2d 482, 490 (S.D.N.Y.2012) (dismissing the plaintiff's trademark infringement claims). But in *TechnoMarine* the court found non-genuineness was one of three ways to allege consumer confusion in a trademark claim. *Id.* at 487–88 ("Consumer confusion may be alleged in at least three ways. First ... the non-exclusive 8–factor test of *Polaroid Corp. [v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961) ] ... [second] where the alleged infringer used a 'counterfeit' mark.... [and t]hird, for 'grey market' goods—goods that are ... asserted to be not 'genuine.'"). Without considering the substance of this assertion, even if true, Plaintiff can still allege a trademark violation based on the *Polaroid* test or by alleging a counterfeit mark. Thus, Defendant's contention is rejected.

## C. Trademark Dilution

Plaintiff asserts Defendant's conduct caused dilution by blurring the distinctiveness of the mark. Under the Lanham Act "the owner of a famous mark that is distinctive," is protected against the use by "another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C.A. § 1125(c)(1).[8] Simi-

larly, New York General Business Law § 360–l provides for injunctive relief when there is a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name ... notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen. Bus. Law § 360–l.

"Harm from dilution is caused when a mark loses its advertising value, because its distinctiveness in the minds of consumers is undermined." *Dreyfus Fund, Inc. v. Royal Bank of Canada,* 525 F.Supp. 1108, 1123 (S.D.N.Y.1981) (issuing a preliminary injunction against the defendant). The central inquiry is whether the junior use of the mark reduces the ability of the mark to "serve as a unique identifier of [the senior user's] products and services." *New York Stock Exch., Inc. v. New York, New York Hotel LLC,* 293 F.3d 550, 558 (2d Cir.2002) (reversing summary judgment for the defendant). The question of dilution has often been found a question of fact for trial. *Jordache Enterprises, Inc. v. Levi Strauss & Co.,* 841 F.Supp. 506, 523 (S.D.N.Y.1993) (denying summary judgment because "the question of whether Jordache's use of the '101' mark is likely to dilute the distinctive quality of Levi's '501' mark is an issue of fact").

### 1. *Dilution under the Lanham Act*

To succeed in a claim for dilution under the Lanham Act, a plaintiff

---

**8.** Two statutes codified trademark dilution in the Trademark Act of 1946, which is referred to as the "Lanham Act." 15 U.S.C.A. § 1125. In 1995 Congress passed the Federal Dilution Trademark Act, creating a federal cause of action for trademark dilution. Pub.L. No. 104–98, § 3(a), 109 Stat. 985 (codified as 15 U.S.C. § 1125). Following the Supreme Court decision in *Moseley v. V Secret Cata-*

*logue, Inc.,* 537 U.S. 418, 433, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003) that held the FDTA required a showing of actual dilution, Congress amended the statute to clarify a mark holder must only show a likelihood of dilution in the Trademark Dilution Revision Act of 2006. Pub.L. No. 109–312, 120 Stat 1730 (codified as.15 U.S.C. § 1125).

must show that the mark is distinctive and famous, and that the defendant's use of the mark caused an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B), *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 105 (2d Cir.2009). Protection from dilution is much broader than traditional trademark protection, which is limited to use of marks with products in the same market that could cause confusion. *TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.,* 244 F.3d 88, 94 (2d Cir. 2001). Dilution protection exists among all industries regardless of whether the use causes consumer confusion, which is why it is limited to famous marks. *Id.* "Some classic examples of blurring include 'hypothetical anomalies as Dupont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, Bulova gowns, and so forth.'" *Starbucks Corp.,* 588 F.3d at 105 (internal citations omitted).

a. Distinctive and Famous

■■■■ Under federal law, a higher degree of distinctiveness is required for dilution protection than to show a protectable interest for trademark infringement. *TCPIP Holding,* 244 F.3d at 95–96 (noting many descriptive marks have become famous, but are not sufficiently distinctive for protection under the Lanham Act, such as "American, National, Continental, Metropolitan . . . and so forth."). "The threshold finding of distinctiveness . . . is a necessary, but not sufficient, element of fame." *Nabisco, Inc. v. PF Brands, Inc.,* 50 F.Supp.2d 188, 202 (S.D.N.Y.1999) (granting the defendant's motion for a preliminary injunction) aff'd, 191 F.3d 208 (2d Cir.1999). "[T]he element of fame is the key ingredient. . . . the senior mark be truly famous before a court will afford the owner of the mark the vast protections of

the FTDA." *Savin Corp. v. Savin Grp.,* 391 F.3d 439, 449 (2d Cir.2004) (upholding a finding the mark was famous).

"[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C.A. § 1125(c)(2).

In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.*

The Second Circuit found there was sufficient evidence the SAVIN mark was famous to survive summary judgment because the evidence showed the plaintiff earned $674 million in revenues and in 2002 alone it spent $20 million in advertising the SAVIN mark in well-known, national publications. *Savin,* 391 F.3d at 450 (noting the advertisements were "regularly featured in print and television advertisements, trade magazines, and tradeshow promotions"). This evidence supported an inference the mark was recognized by the general public. *Id.* The court noted that the "at-issue marks ultimately may be found [at trial] to possess only a degree of 'niche fame'" was insufficient to support a federal claim for trademark dilution. *Id.* at 450. But it concluded the "[p]laintiff

has shown 'more than a mere scintilla of evidence' of fame, which is a sufficient quantum of proof to submit the question to the finder of fact." *Id.*

The plaintiffs in *TCPIP* failed to produce sufficient evidence their mark THE CHILDREN'S PLACE was famous. 244 F.3d at 98 (vacating a preliminary injunction, but "express[ing] no view whether TCPIP may be capable of showing at trial that its mark is 'famous' within the meaning of the statute, if it submits appropriate evidence"). The Second Circuit found a mere accounting of $280 million in revenue and "tens of thousands" of dollars spent in advertising was insufficient to show fame because there was no evidence of "how many millions, when expended or how effectively" and no press accounts, consumer surveys or other evidence of fame. *Id.* at 99.

The complaint alleges the mark has been used for more than 60 years with "some of the most famous designs of the 20th century." Complaint at ¶ 41. Appended to the complaint is a copy of Plaintiff's website showing images of GEORGE NELSON furnishings on the cover of Life magazine, in the 1984 World's Fair, and in the 1959 American National Exhibition in Moscow. (ECF No. 1–5). The complaint also alleges fame through numerous awards recognizing the designs, and numerous books about the GEORGE NELSON designs. Complaint at ¶¶ 10–11. The complaint appends a copy of Defendant's website which claims "the George Nelson Bubble Lamp ... is a tried-and-true standard of the modern vocabulary." (ECF No. 1–5).

As in *Savin*, publication in well-known national magazines supports a showing the mark is famous. Unlike *TCPIP*, the complaint points to specific publications and alleges the national, and even global, renown of the marks. In addition, the com-

plaint alleges the mark has been used to identify furnishings since the 1940s, and has been publicized to a national and international audience, asserting substantial longevity and geographic extent of the marks.

Defendant contends the marks are not famous, only the person George Nelson is famous, citing to *TCPIP*, 244 F.3d at 97. The Second Circuit explained that the mark must be famous "as the designator of the plaintiff's goods or services," and merely taking a famous name, such as Zeus or Shakespeare, is insufficient to establish fame. *Id.* But *TCPIP* is inapposite on this point because George Nelson is famous for creating furniture, just as Henry Ford is famous for creating cars. His notoriety is due to the famousness of his designs. Although the designer George Nelson may have been famous, it is his designs publicized under the NELSON marks that are featured on the cover of Life magazine, not George Nelson the person. Defendant's contention the GEORGE NELSON mark is not sufficiently famous to support a claim for trademark dilution is rejected.

b. Dilution by Blurring under the Lanham Act

" '[D]ilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C.A. § 1125.

In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

(i) The degree of similarity between the mark or trade name and the famous mark.

(ii) The degree of inherent or acquired distinctiveness of the famous mark.

(iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv) The degree of recognition of the famous mark.

(v) Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi) Any actual association between the mark or trade name and the famous mark.

*Id.* The Second Circuit does "not consider all six statutory factors listed in 15 U.S.C. § 1125(c)(2)(B)(i)-(vi) if some are irrelevant to the ultimate question; nor are we limited to those six factors." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 736 F.3d 198, 207 (2d Cir.2013) (affirming a judgment denying the plaintiff's request for an injunction which the district court entered after the Second Circuit remanded the case in 2009 in *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 105 (2d Cir.2009)).

The defendant's CHARBUCKS mark was not substantially similar to the plaintiff's STARBUCKS mark in *Starbucks Corp.,* even though the sound and spelling are similar, because the marks were presented to consumers in substantially different contexts. 588 F.3d at 106. The defendant's packaging clearly displayed the name Black Bear coffee roaster, stated it was roasted in New Hampshire, and used different imagery, color and format from the Starbucks logo. *Id.* (comparing the defendant's black bear logo with the Starbucks' siren logo).

The Second Circuit focused on the association factors to determine whether the similarity between the marks "impairs the distinctiveness of the famous mark." *Id.* at 109 (internal quotations omitted). Tes-

timony supported a finding that the defendant intended to create an association with Starbucks when it named its extremely dark-roasted coffee CHARBUCKS. *Id.* (noting bad faith is irrelevant finding an intent to associate). On appeal a second time in 2013, the Second Circuit upheld the district court's finding there was little actual association between the CHARBUCKS and STARBUCKS marks, despite survey data the plaintiffs presented showing a general association of the names, because the same survey data showed consumers did not think Starbucks sold a product called Charbucks. *Starbucks Corp.,* 736 F.3d at 210 (finding the survey question showing 30% of consumers associated the names was flawed, because it was unlikely the Charbucks name would be presented outside the context of Black Bear coffee).

There was a likelihood of dilution by blurring in *Nabisco, Inc. v. PF Brands, Inc.* because Pepperidge Farm's goldfish crackers were substantially similar to the small goldfish-shaped cheese crackers sold in Nabisco's CatDog cracker mix. *Nabisco, Inc. v. PF Brands, Inc.,* 50 F.Supp.2d 188, 206 (S.D.N.Y.1999) aff'd, 191 F.3d 208 (2d Cir.1999) (granting Pepperidge Farm a preliminary injunction). The Second Circuit concluded "[t]he use by Nabisco of a small goldfish-shaped cheese cracker has a dilutive effect on the ability of a Goldfish cracker to signal Pepperidge Farm as its single source." *Id.*

Finally, the Supreme Court indicated that a showing the junior mark is identical to the senior mark is per se evidence of actual dilution. *Moseley v. V Secret Catalogue, Inc.,* 537 U.S. 418, 434, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003) (finding direct evidence of dilution not necessary if "actual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior marks

are identical"). Although the *Moseley* requirement to show actual dilution was eliminated in the Trademark Dilution Revision Act of 2006 Pub.L. No. 109–312, 120 Stat 1730 (codified as 15 U.S.C.A. § 1125) (see note 7, supra) (TDRA), the complaint is certainly sufficient if it meets a higher standard than the statute requires.

The complaint alleges the defendant's mark is identical to the plaintiff's mark, and is presented in the same context, appurtenant to furnishings designed by George Nelson. Complaint at ¶ 20 The complaint alleges Defendant's unlicensed products are sold next to licensed GEORGE NELSON furnishings, and this "has caused actual confusion in the marketplace and among retailers who hold themselves out as selling only licensed, authorized products from famous designers." Complaint at ¶ 20. This is unlike the different logos and clear designation of a different origin of the coffee in *Starbucks Corp.* Just as the use of the goldfish crackers in *Nabisco* diluted Pepperidge Farm's ability to be identified as the single source of the product, the use of the NELSON marks in connection with lamps George Nelson designed dilutes Plaintiff's ability to identify itself as the single source of GEORGE NELSON licensed products.

The complaint further alleges Defendant's website states "Modernica is the official site for the George Nelson Bubble Lamp Collection." (ECF No. 1–5). This supports an inference that Defendant intentionally created an association with GEORGE NELSON. The complaint also alleges actual association of the products among retailers of authorized products. Complaint at ¶ 20. Accordingly, the complaint sufficiently alleges Defendant's sale of identical products and assertion it is the "official" source of those products to support a claim for trademark dilution by blurring under the Lanham Act.

### 2. *New York Business Law*

■ Similar to federal law, New York General Business Law § 360–l protects distinctive marks from dilution, but it does not "require a mark to be 'famous' for protection against dilution to apply." *Starbucks Corp.*, 588 F.3d at 114; *New York Stock Exch., Inc.*, 293 F.3d at 557 ("Unlike our ruling as to the Lanham Act in *TCPIP*, New York law accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive."). Since Plaintiff has met the more rigorous standard for fame under the Lanham Act, this discussion focuses on dilution by blurring.

■ "[D]ilution by 'blurring' may occur where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39, 43 (2d Cir.1994) (affirming a preliminary injunction). Courts in the Second Circuit consider six factors to determine dilution by blurring under New York law:

(i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark.

*New York Stock Exch., Inc.*, 293 F.3d at 558 (reversing summary judgment for the defendant based on dilution by tarnishment, but not by blurring). Unlike the Lanham Act, New York law requires the marks be substantially similar. *Starbucks Corp.*, 588 F.3d at 114 (noting this was also the case in federal law before the TDRA).

This case is similar to *PepsiCo, Inc. v. F & H Kosher Supermarket, Inc.* where the plaintiff alleged the defendant sold Pepsi products in the United States that were only licensed for sale in Israel. No. 11–CV–0425, 2011 WL 6181907 (E.D.N.Y. Aug. 26, 2011) report and recommendation adopted, 11–CV–0425 RRM ALC, 2011 WL 6179269 (E.D.N.Y. Dec. 12, 2011). On a motion for default judgment, the district court adopted the magistrate judge's finding that the complaint alleged the sale of unlicensed products was "likely to dilute the quality and diminish the capacity of the PEPSI marks to identify and distinguish PepsiCo's authorized goods and services." *Id.* at *7.

As discussed above, the marks are substantially similar. Similar to *PepsiCo.,* the complaint alleges Defendant sells its product with the mark GEORGE NELSON but without a license to use the marks, and this diminishes consumers' ability to distinguish between the licensed and unlicensed marks. Complaint at ¶ 42. Considering the six factors articulated in *New York Stock Exch.,* the complaint alleges marks are identical, the marks are used on the same kinds of products, the senior mark is renowned, and the renown of the junior mark appears to be derived from the renown of the senior mark. The complaint alleges the consumers are "brand conscious," and the products themselves—high-end designer furnishings—indicate a degree of sophistication. Complaint at ¶ 42. Finally, as discussed above, the complaint alleges a predatory intent. Thus, Defendant's arguments against Plaintiff's claims of dilution are rejected.

### D. Other State Law Claims

#### 1. *Unfair Competition*

 "The essence of an unfair competition claim under New York law is that the defendant has misappropriated the la-

bors and expenditures of another." *Lehman,* 625 F.2d at 1044 ("Central to this notion is some element of bad faith."). A defendant acted in bad faith if it "adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Ret. Living Pub. Co., Inc.,* 949 F.2d 576, 583 (2d Cir.1991) (affirming grant of summary judgment to the defendant); *Savin,* 391 F.3d at 460. "Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark." *Star Indus., Inc. v. Bacardi & Co. Ltd.,* 412 F.3d 373, 389 (2d Cir.2005) (affirming judgment for the defendant following a bench trial).

No evidence of bad faith was found in *Savin* because there was no evidence the defendants were aware of the mark, and even if defendants had done a trademark search, the mark was only in use for photocopy products, not for professional engineering services. *Savin,* 391 F.3d at 460 (affirming the grant of summary judgment to defendants on the plaintiff's trademark infringement claim after finding no evidence of bad faith). Moreover, the court found the defendants arrived at the name SAVIN independently, inverting the nickname of the owner, Nivas. *Id.* at 477. These facts did not support a finding that the defendant adopted the mark with the intent to capitalized on the plaintiff's goodwill or reputation. *Id.* at 460.

Similarly, in *Deere & Co.* the defendant produced evidence that it attempted to create a distinctive mark, and showed that the yellow and green colors adopted for the lawnmowers were both intuitive (green grass and yellow sun), and practical to avoid stains and reduce heat absorption. *Deere & Co. v. MTD Holdings Inc.,* No. 00–cv–5936, 2004 WL 324890, at *16 (S.D.N.Y. Feb. 19, 2004) (denying summary judgment on some of the plaintiff's

trademark infringement claims, but not on others). The plaintiff's only evidence of bad faith on summary judgment was that the defendant was aware of the plaintiff's use of the same colors in its products. *Id.* This evidence did not "show MTD intended to promote confusion between the products or appropriate Deere's goodwill." *Id.* (noting "intent to compete by imitating the successful features of another's product is vastly different form the intent to deceive purchasers as to the source of the product"). But the adoption of the DeBeers mark was intended to capitalize on the goodwill of the DeBeers name in diamonds by registering domain names and conducting sales over the internet "to deceive the public and sow confusion." *De Beers LV Trademark Ltd.*, 440 F.Supp.2d at 278 (distinguishing this from an earlier adoption of the mark that would not have caused customer confusion in the brick-and-mortar consignment shop and granting judgment to the plaintiff after a trial).

The complaint alleges Defendant is using the identical mark to sell George Nelson designs, and is capitalizing on the "substantial renown" of the marks. Complaint at ¶ 22. The complaint appends screen shots of Defendant's website stating that "Modernica is the official site for the George Nelson Bubble Lamp Collection." (ECF No. 1–5). This is unlike the selection of similar colors to sell competing products in *Deere*, or the use of same name to sell an unrelated service in *Savin.* Rather, the alleged use appears to intentionally capitalize on the goodwill and reputation of the marks.

Defendant does not assert it had no prior knowledge of Plaintiff's use of the marks or that it came to the marks independently. The complaint cites to Defendant's website discussing the history of George Nelson designs. (ECF NO. 1–5). This evidence of prior knowledge supports

an inference of bad faith. *Star Indus.*, 412 F.3d at 389. Thus, Defendant's contention is rejected.

**2. *New York General Business Law § 349***

New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business." N.Y. Gen. Bus. Law § 349. A plaintiff must show (1) the defendant's challenged acts or practices were directed at consumers, (2) the acts or practices were misleading in a material way, and (3) the plaintiff sustained injury as a result. *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir.2007) (vacating dismissal of the complaint). An act is misleading when it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y.1995) (affirming a grant of summary judgment to the defendants)). A misstatement is material if the information would be important to consumers and could affect their choice of product. *Leonard v. Abbott Labs., Inc.*, No. 10–CV–4676, 2012 WL 764199, at *20–21 (E.D.N.Y. Mar. 5, 2012) ("However, statements that are vague or 'either mere puffery or hyperbole' such that 'a reasonable consumer would not view [them] as significantly changing the general gist of available information … are not material, even if they were misleading.' ") (denying a motion to dismiss) (quoting *In re Ford Motor Co. Securities Litig., Class Action*, 381 F.3d 563, 570 (6th Cir.2004)). The statute was created as a consumer-protection measure, but competing businesses do have standing to bring claims under the statute if they can show the requisite harm to the public. *Oswego*, 85 N.Y.2d at 25–26, 623 N.Y.S.2d 529, 647 N.E.2d 741.

In *Zip International* the defendant advertised its product as genuine Troll seeds under the plaintiff's mark without authorization, and the plaintiff alleged the seeds the defendant sold were of inferior quality to the seeds the plaintiff imported. *Zip Int'l Grp., LLC v. Trilini Imports, Inc.,* No. 09–CV–2437, 2010 WL 648696, at *6 (E.D.N.Y. Feb. 22, 2010) (finding this allegation "supports a reasonable inference that consumers are being harmed because they are inadvertently purchasing a product of inferior quality, a product they do not prefer, or both" and denying the motion to dismiss). In *Krasnyi Oktyabr, Inc. v. Trilini Imports* the plaintiff alleged the defendants sold the same brand of Russian candy that the plaintiff had an exclusive contract to sell, but because they were not subject to the plaintiff's quality controls, the candy could be stale or sold after the expiration date. No. 05–CV–5359, 2007 WL 1017620, at *1–2 (E.D.N.Y. Mar. 30, 2007) (denying a motion to dismiss). The court rejected the defendant's argument that it could not be misleading the public by selling genuine products because the complaint alleged the defendant's acts were "likely to cause confusion, mistake or deception as to the affiliation, connection or association with" the plaintiff's licensed products, "and/or as to the origin, sponsorship or approval of Defendants' goods or commercial activities by" the plaintiff and the product licensors. *Id.* at *11. This false association could mislead consumers "into believing that the goods meet the quality control standards that consumers associate with the trademark holder's products, resulting in a cognizable injury." *Id.*

The complaint alleges "Modernica deceivingly states on the Modernica website that 'Modernica is the official site for the George Nelson Bubble Lamp® Collection.'" Complaint at ¶ 19. As in *Krasnyi Oktyabr,* this allegation supports a misrepresentation that Defendant's products are associated with or approved by George Nelson's successors in interest. The complaint does not allege any potential inferiority of Defendant's products as the plaintiffs did in *Krasnyi Oktyabr* and *Zip International.* But the compliant does allege a harm to consumers. Citing to Defendant's website, the complaint and alleges Defendant sells GEORGE NELSON Bubble Lamps for as much as $1,395, indicating consumers pay a premium for what they believe are official GEORGE NELSON products. Complaint at ¶¶ 18 & 54. This allegation supports a finding the misleading association is material because it could cause a reasonable consumer to decide to purchase the product, believing it was an authorized GEORGE NELSON lamp.

This conduct is directed at the consuming public, because the allegedly misleading statements are displayed on the web page selling the allegedly infringing products. *Cf. Int'l Design Concepts, LLC v. Saks Inc.,* 486 F.Supp.2d 229, 239 (S.D.N.Y.2007) (finding on summary judgment the misleading pricing was directed at retailers, not directly to customers); and *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* 155 F.Supp.2d 1, 26 (S.D.N.Y.2001) aff'd in part and remanded, 277 F.3d 253 (2d Cir.2002) (dismissing the deceptive business practices claim because the public had limited exposure to the allegedly infringing product and could not have been harmed).

Finally, Defendant asserts compliance with federal law is a complete defense to a Section 349 claim, but cites no law supporting this proposition. Even if it is a defense, the complaint alleges violations of the Lanham Act. Accordingly, the deceptive practices claim shall not be dismissed on that basis.

## E. Additional Defendant Contentions

### 1. *Cancellation of Trademarks*

"The petitioner must show 'a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark.'" *In re Houbigant, Inc.*, 914 F.Supp. 997, 1002 (S.D.N.Y.1996) (dismissing the plaintiff's claim for trademark cancellation for lack of standing). Defendant contends Plaintiff lacks standing to seek cancellation of Modernica's registrations of the NELSON and GEORGE NELSON marks with the U.S. Patent and Trademark Office because Plaintiff does not have any pecuniary interest in the marks. This argument reasserts Defendant's arguments for abandonment. Plaintiff has standing to seek cancellation of the marks for the same reasons it has a protectable interest in the marks, as discussed above.

### 2. *Laches*

■■■■■ "Defendant's proof in its laches defense must show that plaintiff had knowledge of defendant's use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time." *Lehman*, 625 F.2d at 1040. While "actual knowledge is usually required to prove laches, a defendant may be barred when the plaintiff's conduct has been open and no adequate justification for ignorance is offered." *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F.Supp. 707, 718 (S.D.N.Y.1973) (entering judgment for the defendant after a bench trial) *aff'd* 523 F.2d 1331 (2d Cir.1975). Since the Lanham Act does not specify a limitations period, the Second Circuit looks to the analogous six-year limitation on claims under the fraud statute to impose a time limit on trademark infringement claims. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir.1996) (affirming judgment on partial findings for the defendant). A defendant must show the delay caused prejudice by demonstrating the "defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Id.* at 192.

■■■■■ Laches is an affirmative defense and is generally not available on a motion to dismiss. *Lennon v. Seaman*, 63 F.Supp.2d 428, 439 (S.D.N.Y.1999) (denying a motion to dismiss on laches). "However, in certain circumstances, when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Id.* (finding disputed issues of fact precluded dismissal on the basis of latches).

The Second Circuit holds "laches is not a defense against injunctive relief when the defendant intended the infringement." *Harlequin Enterprises Ltd. v. Gulf & W. Corp.*, 644 F.2d 946, 950 (2d Cir.1981) (affirming a preliminary injunction because laches did not bar the claims); *see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir.2000) (reversing the grant of partial summary judgment to the defendants because "intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities, as the district court did in this case"); *Société Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage*, No. 08–cv–0315, 2008 WL 4974800, at *6 (S.D.N.Y. Nov. 24, 2008) (applying this holding to monetary claims for trademark infringement and dilution in denying a motion to dismiss).

In *Lennon v. Seaman* the court declined to rule on the question of laches at the motion to dismiss stage because "laches would necessarily involve a fact-intensive analysis and balancing of equities that would require the Court to consider matters outside of the pleadings that are in dispute." 63 F.Supp.2d at 439. Following a bench trial, a defendant's counter-claim for trademark infringement delayed for ten years was not barred by laches, even though the defendant's sales were open and continuous, because the defendant could not show it expanded its business or increased advertising or promotion of the mark in reliance on the plaintiff's inaction. *Steinway & Sons*, 365 F.Supp. at 718. Accordingly, the evidence did not show any prejudice to the defendant, which is required to bar a claim based on laches or estoppel. *Id.* Prejudice was shown in *Juicy Couture, Inc. v. L'Oreal USA, Inc.* because the defendant invested substantial sums into developing and advertising various Juicy Wear products and this was the sixth line of Juicy products the defendant had introduced without objection by the plaintiff. No. 04 CIV.7203, 2006 WL 1012939 (S.D.N.Y. Apr. 19, 2006) (concluding after a bench trial that "[t]hese efforts would be severely compromised by a decision granting Couture the relief it seeks").

At this stage the complaint does not allow any conclusion that Plaintiff's claims are barred by laches. Defendant asserts Plaintiff has waited five years from the date of Defendant's trademark filing, and allegedly fourteen years from the time Defendant adopted the NELSON marks. If true, Plaintiff's claims could be barred by laches, but there are several issues of disputed fact that must be resolved to make such a finding. Moreover, even if this Court could accept Defendant's representations regarding knowledge and duration, Defendant does not point to any facts showing it was prejudiced by Plaintiff's failure to act sooner. There is no evidence Defendant expanded its business or increased its promotion of the products because Plaintiff failed to assert its rights earlier, which was the reason the court rejected the defense of laches in *Steinway & Sons*, 365 F.Supp. at 718. Accordingly, it is not obvious from the face of the complaint that Plaintiff's claims are barred by laches, and Defendant's contention is rejected.

### 3. *Estoppel*

■■■■ To show estoppel a Defendant must establish "(1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice." *Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 326 (2d Cir.2004) (affirming a grant of summary judgment). Silence may in some cases be sufficient to establish a misrepresentation. *Id.* (finding there was no question of silence because the plaintiff had informed the defendant of his concerns that later gave rise to his claims); *see also Gen. Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir.1994) ("Silence in the face of an explicit contrary assumption by an innocent party may constitute a concealment of facts or a false misrepresentation for estoppel purposes."). But a defendant cannot rely on silence "[i]n the absence of a duty to speak." *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537, 566 (S.D.N.Y.2013) (granting the plaintiff's motion for summary judgment).

The Associated Press's copyright infringement claim was not estopped in *Meltwater* because the defendant did not have any "relationship or communication with AP that imposed upon AP the duty to speak." *Id.* The court found a failure to restrict access to online content and a failure to object to the defendant's use of its content prior to filing suit did was not a material misrepresentation. *Id.* "In the

absence of a duty to speak, Meltwater could not reasonably rely on AP's alleged silence about its copyright infringement." *Id.*

Defendant here relies on the same failure to raise objections that was rejected in *Meltwater*. Defendant does not allege any communication with Plaintiff that would give rise to a duty to speak. As the court found in *Meltwater*, a failure to object to allegedly infringing use does not constitute a material representation sufficient to show estoppel. Defendant's contention that Plaintiff's claims are barred by estoppel is rejected.

### 4. *Acquiescence*

 A senior user may be estopped from asserting rights by active acquiescence. To show acquiesce, the junior user must prove "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 294 F.3d 383, 395 (2d Cir.2002) (quoting *SunAmerica Corp. v. Sun Life Assur. Co. of Canada,* 77 F.3d 1325, 1334 (11th Cir. 1996)) (affirming summary judgment for the defendants). Active consent can be shown "by conduct that amounts to an explicit or implicit assurance that plaintiff, with knowledge of defendant's conduct, will not assert its trademark rights." *ProFitness Physical Therapy Ctr. v. ProFit Orthopedic & Sports Physical Therapy P.C.,* 314 F.3d 62, 68 (2d Cir.2002) (vacating summary judgment for defendant). It requires the trademark owners to convey consent through "an affirmative word or deed." *Emmpresa Cubana Del Tabaco v. Culbro Corp.,* 213 F.Supp.2d 247, 276

(S.D.N.Y.2002) (denying summary judgment based on acquiescence).

In *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena* the senior mark holder approved of the defendant's use of the mark, and even sold the defendant's products in its stores. 433 F.2d 686, 704 (2d Cir.1970) (affirming trial judgment for plaintiffs). This was not found to be acquiescence because the plaintiff continued to assert its trademark, was negotiating a licensing agreement with the defendant, and "[t]here was no showing of any intent on the part of appellee Foundation to abandon its rights in the marks." *Id.* ("Under these circumstances the conduct of appellee Foundation cannot be said to constitute either acquiescence or abandonment warranting denial of relief."). The senior mark holder did acquiesce in *ProFitness Physical Therapy Ctr.,* because after it sent a cease and desist letter to the defendant, the defendant wrote back with a proposed name change and wrote that if the plaintiff did not respond to its proposal, the "failure to respond would be understood as an agreement to the proposed name change." 314 F.3d at 68 (vacating summary judgment for the defendant). The Second Circuit concluded that under these circumstances the defendant could "rely on plaintiff's silence as consent to its good faith offer of accommodation to do business under a new mark." *Id.* at 69.

Defendant contends that Plaintiff's failure to police its mark constitutes acquiescence. Citing to facts outside the Compliant, Defendant contends Plaintiff knew Defendant was selling lamps under the NELSON marks to Plaintiff's partner, Herman Miller, and did not object, nor did it oppose Defendant's 2009 trademark filing.[9] A mere failure to act alone is insufficient. Moreover, *Carl Zeiss Stiftung* presented similar facts where the Plaintiff

---

**9.** These facts are attested to in the Novak

Declaration, which Defendant has agreed to

sold the Defendant's products in its stores, but because it continued to assert its trademark, even this conduct was not found to be acquiescence. Unlike *ProFitness* there is no communication alleged between Plaintiff and Defendant, let alone conduct on which Defendant could reasonably rely that Plaintiff would not assert its rights. Defendant's assertion of acquiescence is rejected as grounds for dismissal of the Complaint.

### III. CONCLUSION

Plaintiff has adequately alleged use of the mark in commerce. The question of abandonment may be central to this case. The complaint alleges Plaintiff continued to license use of its marks through the period Defendant asserts the marks were abandoned. Since these are questions of fact, and the complaint makes sufficient allegations to support the claims asserted, this Court shall deny Defendant's motion to dismiss.

The Court also concludes the Complaint is sufficiently factual and no purpose would be served by requiring Plaintiff to amend its complaint.

exclude from consideration of its motion.