19-3953-cv
*Avon Nursing & Rehabilitation v. Becerra*

# United States Court of Appeals
# for the Second Circuit

August Term, 2020

(Argued: September 2, 2020      Decided: April 27, 2021)

Docket No. 19-3953

_____

AVON NURSING AND REHABILITATION, BRIGHTONIAN NURSING AND REHABILITATION, WOODSIDE MANOR NURSING AND REHABILITATION, THE SHORE WINDS NURSING AND REHABILITATION, THE HURLBUT NURSING AND REHABILITATION, HORNELL GARDENS NURSING AND REHABILITATION, CONESUS LAKE NURSING AND REHABILITATION, NEWARK MANOR NURSING AND REHABILITATION, PENFIELD PLACE NURSING AND REHABILITATION, HAMILTON MANOR, LATTA ROAD NURSING HOME EAST, LATTA ROAD NURSING HOME WEST, SENECA NURSING AND REHABILITATION, ELDERWOOD AT AMHERST, ELDERWOOD OF LAKESIDE AT BROCKPORT, ELDERWOOD AT CHEEKTOWAGA, ELDERWOOD AT GRAND ISLAND, ELDERWOOD AT HAMBURG, ELDERWOOD OF HORNELL, ELDERWOOD OF UIHLEIN AT LAKE PLACID, ELDERWOOD AT LANCASTER, ELDERWOOD AT LIVERPOOL, ELDERWOOD AT LOCKPORT, ELDERWOOD AT NORTH CREEK, ELDERWOOD AT WAVERLY, ELDERWOOD AT WHEATFIELD, ELDERWOOD AT WILLIAMSVILLE, ELDERWOOD AT RIVERSIDE, ELDERWOOD OF SCALLOP SHELL AT WAKEFIELD, WESTCHESTER CENTER FOR REHABILITATION AND NURSING, HIGHFIELD GARDENS CARE CENTER OF GREAT NECK, SAN SIMEON BY THE SOUND, DRY HARBOR NURSING HOME AND REHABILITATION CENTER,

*Plaintiffs-Appellants*,

NEW YORK CENTER FOR REHABILITATION AND NURSING,

*Plaintiff,*

v.

XAVIER BECERRA, Secretary of the United States
Department of Health and Human Services,

*Defendant-Appellee.*[*]

_____

Before:

KATZMANN, LOHIER, and PARK, *Circuit Judges*.

Plaintiffs-Appellants are a group of nursing homes that participate in both the Medicare and Medicaid programs, making them "dually participating facilities." They challenge the legality of a Final Rule issued by the U.S. Department of Health and Human Services that permits survey teams conducting certain inspections of nursing homes not to include a registered nurse. The United States District Court for the Southern District of New York (Swain, *J.*) dismissed Plaintiffs' claims, brought under the Medicare and Medicaid Acts, for lack of subject-matter jurisdiction based on claim-channeling and jurisdiction-stripping provisions governing claims arising under the Medicare Act. We conclude, however, that the district court has jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claim arising under the Medicaid Act, which does not incorporate the same claim-channeling and jurisdiction-stripping provisions as the Medicare Act. The Medicare Act's review provisions do not preclude Plaintiffs from challenging the Final Rule in federal court because their challenge is independently rooted in the Medicaid Act. **REVERSED** and **REMANDED** for further proceedings.

BRIAN MARC FELDMAN, Harter Secrest & Emery LLP, Rochester, NY, *for Plaintiffs-Appellants*.

_____

[*] Under Federal Rule of Appellate Procedure 43, Secretary Xavier Becerra is automatically substituted for former Secretary Alex Azar. The Clerk of Court is respectfully directed to amend the caption accordingly.

2

CHRISTOPHER CONNOLLY (Arastu K. Chaudhury, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellee*.

James F. Segroves, Reed Smith LLP, Washington, DC, *for Amicus Curiae American Health Care Association*.

PARK, *Circuit Judge*:

Plaintiffs-Appellants are a group of nursing homes that participate in both the Medicare and Medicaid programs, making them "dually participating facilities." They challenge the legality of a U.S. Department of Health and Human Services ("HHS") regulation that permits survey teams conducting certain inspections of nursing homes not to include a registered nurse. *See* Survey Team Composition, 82 Fed. Reg. 36,530, 36,623–25, 36,635–36 (Aug. 4, 2017) (the "Final Rule").

The United States District Court for the Southern District of New York (Swain, *J.*) dismissed Plaintiffs' claims for lack of subject-matter jurisdiction based on claim-channeling and jurisdiction-stripping provisions governing claims arising under the Medicare Act. We conclude, however, that the district court has jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claim arising under the Medicaid Act, which does not incorporate the same claim-channeling and

jurisdiction-stripping provisions as the Medicare Act. The Medicare Act's review provisions do not preclude Plaintiffs from challenging the Final Rule in federal court because their challenge is independently rooted in the Medicaid Act.

We reverse the judgment of the district court and remand for further proceedings.

## I. BACKGROUND

A.    Statutory Context and the Final Rule

Congress created the Medicare and Medicaid programs in 1965. *See* Social Security Amendments of 1965, Pub. L. No. 89-97, §§ 102, 121, 79 Stat. 286, 291, 343. Medicare, set forth in subchapter XVIII of the Social Security Act, is a federally funded health-insurance program for the aged and disabled. 42 U.S.C. § 1395c. Medicaid, set forth in subchapter XIX, is a cooperative federal-state medical assistance program for individuals "whose income and resources are insufficient to meet the costs of necessary medical services." *Id.* §§ 1396-1, 1396a. The programs cover certain stays in nursing facilities, and the vast majority of nursing

facilities participate in both Medicare and Medicaid,[1] making them "[d]ually participating facilit[ies]."  42 C.F.R. § 488.301.

State health agencies are responsible for conducting periodic inspections, or "surveys," and "certifying . . . the compliance of" nursing facilities with the requirements of the Medicare and Medicaid Acts.  42 U.S.C. §§ 1395i-3(g)(1)(A), 1396r(g)(1)(A).[2]  Both Acts direct States to "maintain procedures and adequate staff to . . . investigate complaints of violations of requirements by" nursing facilities.  *Id.* §§ 1395i-3(g)(4), 1396r(g)(4).  "A State may maintain and utilize a specialized team (including an attorney, an auditor, and appropriate health care professionals) for the purpose of identifying, surveying, gathering and preserving evidence, and carrying out appropriate enforcement actions against substandard"

---

[1] *See* Nat'l Ctr. for Health Stats., U.S. Dep't of Health & Hum. Servs., Long-term Care Providers and Services Users in the United States, 2015–2016, at 9–10 (2019), https://www.cdc.gov/nchs/data/series/sr_03/sr03_43-508.pdf (stating that 97.5% of nursing facilities are certified under Medicare and 95.2% are certified under Medicaid).

[2] The Medicare and Medicaid Acts identify three types of surveys conducted by State agencies: (1) "standard" surveys, which occur annually to evaluate the quality of care furnished by a facility, *id.* §§ 1395i-3(g)(2)(A), 1396r(g)(2)(A); (2) "extended" surveys, which are conducted after a standard survey reveals substandard care, *id.* §§ 1395i-3(g)(2)(B), 1396r(g)(2)(B); and (3) "special" surveys, which may include standard or "abbreviated standard" surveys, *id.* §§ 1395i-3(g)(2)(A)(II), 1396r(g)(2)(A)(II), and up until the Final Rule's publication, *see* 82 Fed. Reg. at 36,624, included "survey[s] conducted for the purpose of investigating a complaint against a facility," 59 Fed. Reg. 56,116, 56,158 (Nov. 10, 1994).  The Secretary may also conduct "validation surveys" to evaluate the adequacy of a State agency's survey results.  42 U.S.C. §§ 1395i-3(g)(3), 1396r(g)(3).

nursing facilities. *Id.* §§ 1395i-3(g)(4), 1396r(g)(4). HHS has interpreted this provision to authorize States to conduct "complaint surveys" based on "substantial allegation[s] of noncompliance." 42 C.F.R. § 488.30.

Both the Medicare and Medicaid Acts provide that surveys "shall be conducted by a multidisciplinary team of professionals (including a registered professional nurse)." 42 U.S.C. §§ 1395i-3(g)(2)(E)(i), 1396r(g)(2)(E)(i). In 2017, HHS promulgated the Final Rule, which permits survey teams conducting complaint surveys of nursing homes not to include a registered nurse. *See* Survey Team Composition, 82 Fed. Reg. 36,530, 36,624–25, 36,635–36 (Aug. 4, 2017). The Final Rule "clarif[ied]" the agency's view that the inclusion of a registered nurse on survey teams is not required for "those surveys conducted to investigate complaints or to monitor compliance on-site under sections 1819(g)(4) [Medicare] and 1919(g)(4) [Medicaid] of the [Social Security] Act." 82 Fed. Reg. at 36,531. The Final Rule thus amended HHS's prior regulations to state that only "[s]urveys under sections 1819(g)(2) [Medicare] and 1919(g)(2) [Medicaid] of the Social Security Act [*i.e.*, standard, extended, and special surveys] must be conducted by an interdisciplinary team of professionals, which must include a registered nurse." *Id.* at 36,636 (codified at 42 C.F.R. § 488.314).

The Final Rule was promulgated following administrative proceedings involving one of the Plaintiffs, Avon Nursing & Rehabilitation ("Avon"). *See Avon Nursing Home*, DAB No. CR4670 (2016). In 2013, Avon reported to the New York State Department of Health an incident involving a resident who had sustained a burn after spilling soup on her lap. The State agency sent a survey team consisting of two dieticians and no registered nurse to conduct an abbreviated standard survey of the facility. The survey team found that Avon was not in substantial compliance with Medicare participation requirements and imposed a penalty. Avon challenged the noncompliance determination and penalty before an administrative law judge ("ALJ"). As relevant here, the ALJ concluded that "the state agency violated" the Medicare Act "by permitting a survey team with no registered nurse participating to conduct the survey." *Id.* at 16.

That decision was vacated by the Appellate Division of the Departmental Appeals Board, *see Avon Nursing Home*, DAB No. 2830 (2017), and the parties eventually settled. HHS proposed the Final Rule to address the regulatory question presented by Avon's administrative proceedings.

B.      Medicare and Medicaid Review Procedures

The Medicare Act incorporates claim-channeling and jurisdiction-stripping provisions from the Social Security Act. First, claim-channeling (section 405(g)): The Medicare Act provides that a facility dissatisfied with a determination that it "fails to comply substantially with the provisions of . . . [the Medicare Act] and the regulations thereunder," 42 U.S.C. § 1395cc(b)(2)(A), "shall be entitled to a hearing" before an ALJ and "to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g)" of the Social Security Act, *id.* § 1395cc(h)(1)(A). Section 405(g) states that a party, "after any final decision of the [Secretary] made after a hearing[,] . . . may obtain a review of such decision . . . in [federal] district court." *Id.* § 405(g). The Medicare Act's claim-channeling provision thus requires a facility dissatisfied with a determination by the Secretary to seek administrative review before going to court. *Id.* § 1395cc(h)(1) (incorporating section 405(g)).

Second, the Medicare Act incorporates the Social Security Act's jurisdiction-stripping provision (section 405(h)). This provision states that "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 [federal-question jurisdiction] or 1346 [jurisdiction

over the United States as a defendant] of Title 28 to recover on any claim arising under [the Medicare Act]." *Id.* § 405(h). Section 405(h) is incorporated into the Medicare Act through section 1395ii, which broadly applies the jurisdiction-stripping provision to the entire Medicare Act. *Id.* § 1395ii. Together, sections 405(g) and (h) "channel[] most, if not all, Medicare claims through th[e] special review system" described in section 405(g). *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000).

Unlike the Medicare Act, the Medicaid Act does not incorporate sections 405(g) or (h). Although the Medicaid Act incorporates certain provisions of the Social Security Act relating to subpoenas, *see* 42 U.S.C. § 1396q (incorporating sections 405(d) and (e)), it does not contain provisions mirroring the Medicare Act's incorporation of sections 405(g) and (h)—at least not for claims brought by nursing facilities. Another section of the Medicaid Act does incorporate the claim-channeling provision (section 405(g)), but its application is limited to "intermediate care facilit[ies] for the mentally retarded"; it does not apply to dually participating facilities. *Id.* § 1396i(b)(2).

C.      Procedural History

After publication of the Final Rule, Avon and over thirty other dually participating facilities sued the government in the United States District Court for the Southern District of New York seeking vacatur of the rule and declaratory and injunctive relief.  Plaintiffs' complaint asserts a cause of action under the Administrative Procedure Act ("APA"), challenging the Final Rule "as applied to Medicaid" and "as applied to Medicare."  Compl. ¶¶ 46–47.  Plaintiffs contend that "subsections 1819(g) [Medicare] and 1919(g) [Medicaid] of the Social Security Act require[] that all survey teams include registered nurses—including abbreviated standard surveys . . . and surveys arising following complaints."  *Id.* ¶ 78. But the Final Rule "purports to permit such surveys to be conducted without any registered nurse," *id.*, and according to Plaintiffs, the Final Rule thus "contravenes the plain language of the statute and is therefore arbitrary, capricious, and otherwise not in accordance with law," *id.* ¶ 113.

The government responds that the statutory language "does not unambiguously establish the necessity of registered nurses on all survey teams." Appellee's Br. at 33.  Instead, it "most clearly supports the opposite interpretation: that by cabining the registered nurse requirement to surveys conducted under

'this subsection,' § 1395i-3(g)(2)(E)(i) unambiguously applies that requirement only to standard and extended surveys under (g)(2)." *Id.* Alternatively, the government claims that the relevant language is ambiguous and its "rule interpreting that ambiguity" is entitled to *Chevron* deference. *Id.* at 28–29.

The district court did not reach this issue, however, because it concluded that it lacked subject-matter jurisdiction over Plaintiffs' claims based on the Medicare Act's claim-channeling and jurisdiction-stripping provisions. The court acknowledged that "§ 405(h) has not been incorporated by reference into the Medicaid Act" but concluded that it would not "interpret[] this omission as abrogating" the Medicare Act's claim-channeling requirement "in Medicaid cases involving dually-participating facilities." *Avon Nursing & Rehab. v. Azar*, 410 F. Supp. 3d 648, 655 (S.D.N.Y. 2019) (internal quotation marks omitted). The court explained that "the survey team composition requirements of the Final Rule implicates the same statutory language under both Acts, thus, given '[t]he similar structures of the two Acts, evasion concerns, and considerations of judicial economy and orderliness,' Plaintiffs cannot assert an independent basis of jurisdiction under the Medicaid Act and must pursue their claim through administrative channels in the first instance." *Id.* (quoting *Mich. Ass'n of Homes &*

11

*Servs. for Aging, Inc. v. Shalala*, 127 F.3d 496, 503 (6th Cir. 1997)) (alteration in original).

The district court dismissed the complaint, and this appeal followed.

## II. DISCUSSION

The question presented is whether the claim-channeling and jurisdiction-stripping provisions that govern claims under the Medicare Act apply to Plaintiffs' claim challenging the Final Rule under the Medicaid Act. According to Plaintiffs, the "Medicaid Act, unlike the Medicare Act, contains no provision stripping courts of federal question jurisdiction," so "general federal question jurisdiction under [28 U.S.C.] § 1331 therefore supplies the avenue of judicial review." Appellant's Br. at 43 (quoting *Ill. Council on Long Term Care Inc. v. Shalala*, 143 F.3d 1072, 1076 (7th Cir. 1998), *rev'd on other grounds*, 529 U.S. 1 (2000)). The government responds that the "reading urged by plaintiffs would be inconsistent with the statutory and regulatory scheme," "runs afoul of every appellate court decision to consider the issue," and would enable Plaintiffs "to perform an end-run around § 405(h)." Appellee's Br. at 24–26.

We agree with Plaintiffs. The Medicaid Act, unlike the Medicare Act, does not incorporate the claim-channeling and jurisdiction-stripping provisions of the

Social Security Act. Plaintiffs' challenge to the Final Rule arises under both the Medicare and Medicaid Acts, and their claim that the Final Rule contravenes the Medicaid Act is not inextricably intertwined with a claim for benefits or a compliance determination under the Medicare Act.

A.     Standard of Review

On appeal from a district court's dismissal for lack of subject-matter jurisdiction, "we review factual findings for clear error and legal conclusions *de novo*." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (quoting *Close v. New York*, 125 F.3d 31, 35 (2d Cir. 1997)).

"We begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986). "That presumption is rebuttable . . . . [b]ut the agency bears a heavy burden in attempting to show that Congress prohibited all judicial review of the agency's compliance with a legislative mandate." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (cleaned up); *see also S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 135 (2d Cir. 2010) (holding that "a clear statement from Congress is required before we conclude that a statute withdraws the original jurisdiction of the district courts").

B.      Jurisdiction over Medicaid Act Claims

Unlike the Medicare Act, the Medicaid Act does not incorporate the Social Security Act's claim-channeling and jurisdiction-stripping provisions, 42 U.S.C. § 405(g) and (h).  Federal courts thus have jurisdiction over claims arising under the Medicaid Act pursuant to 28 U.S.C. § 1331.  *See, e.g.*, *Springdale Convalescent Ctr. v. Mathews*, 545 F.2d 943, 949 (5th Cir. 1977) ("[B]y not incorporating 42 U.S.C. § 405(h) into the Medicaid Act," Congress "refused to insulate the Secretary's exercise of statutory authority under that Act from judicial review."), *abrogated on other grounds by Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993).

The fact that the Medicare Act incorporates section 405(h) "reinforce[s] the conclusion that [the Medicaid Act's] silence on the subject leaves the jurisdictional grant of § 1331 untouched," "[f]or where otherwise applicable jurisdiction was meant to be excluded, it was excluded expressly."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 (2002).  "Where Congress includes particular language in one section of a statute but omits it in another," we "presume[] that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *United States ex rel. Hayes v. Allstate Ins. Co.*, 853 F.3d 80, 86 (2d Cir. 2017) (quoting *Kucana v. Holder*, 558 U.S. 233, 249 (2010)).

As a matter of statutory interpretation, then, our subject-matter jurisdiction over claims arising under the Medicaid Act alone is straightforward. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002) ("When the language of a statute is unambiguous, 'judicial inquiry is complete.'" (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992))). The next question is whether this result is different for dually participating facilities bringing claims under both the Medicaid Act, which does not incorporate section 405(h), and the Medicare Act, which does.

C.     Jurisdiction over Claims of Dually Participating Facilities Arising Under Both the Medicaid and Medicare Acts

The government argues that the claim-channeling and jurisdiction-stripping provisions of the Medicare Act apply to Plaintiffs' claims here, which arise under both the Medicare and Medicaid Acts. *See* Appellee's Br. at 25 ("[J]urisdiction over Medicare and Medicaid claims brought by dually-participating facilities like plaintiffs is coextensive."). According to the government, "the Medicaid Act does not provide an independent basis for jurisdiction for claims that are otherwise non-justiciable under the Medicare Act." *Id.* at 15.

We disagree. Although the Final Rule regulates survey teams under both programs, that does not mean that claim-channeling under the Medicare Act also

15

divests the district court of jurisdiction over Plaintiffs' challenge under the Medicaid Act. Section 405(h) strips the district court of subject-matter jurisdiction over Plaintiffs' Medicaid Act claim only if it actually "aris[es] under" the Medicare Act. 42 U.S.C. § 405(h). The Supreme Court has defined claims that "arise under" the Medicare Act as those for which "'both the standing and the substantive basis for the presentation' of the claims is the [Medicare] Act" and those that are "inextricably intertwined with what . . . is in essence a claim for benefits." *Heckler v. Ringer*, 466 U.S. 602, 615, 624 (1984) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975)). Here, Plaintiffs' challenge to the Final Rule arises under both Acts but has an independent basis in the Medicaid Act and is not inextricably intertwined with a claim for benefits under the Medicare Act. The district court thus has jurisdiction over this action.

1.    *Plaintiffs' Challenge Is Independently Rooted in the Medicaid Act*

Plaintiffs argue that the Final Rule violates the APA because it is inconsistent with the text of both the Medicare and Medicaid Acts. The government responds that "Plaintiffs seek to challenge certain of HHS's Medicare regulations, yet ask the Court to find jurisdiction through the Medicaid Act." Gov't Mot. at 5, No. 18-cv-2390, ECF No. 28. Although as a practical matter the claims are essentially identical and the same survey teams enforce regulations under both programs, as

16

a legal matter, the two Acts are distinct, as are Plaintiffs' bases for challenging the Final Rule.

Plaintiffs' challenge to the Final Rule as contrary to the text of the Medicare and Medicaid Acts is independently rooted in both Acts. First, the Final Rule was promulgated under the Social Security Act's general grant of authority to the Secretary to "make and publish such rules and regulations . . . as may be necessary to the efficient administration of the functions with which [the Secretary] is charged" under the Social Security Act, including under both "subchapter XVIII" (Medicare) and "subchapter XIX" (Medicaid). 42 U.S.C. § 1302; *see* 82 Fed. Reg. at 36,635 (citing 42 U.S.C. § 1302). Second, the survey-team regulation amended by the Final Rule is housed in Part 488 of the Code of Federal Regulations, *see* 82 Fed. Reg. at 36,635 (codified at 42 C.F.R. § 488.314), which concerns the survey process and is based on both sections 1819 (Medicare) and 1919 (Medicaid) of the Social Security Act, *see* 42 C.F.R. § 488.2 (setting forth statutory bases). Finally, the regulation applies, on its face, to "[s]urveys under sections 1819(g)(2) [Medicare] and 1919(g)(2) [Medicaid] of the Social Security Act." *Id.* § 488.314.

Moreover, Plaintiffs' challenge is based on both "[t]he plain and unambiguous meaning of . . . subsection 1819(g)" (Medicare) and "the plain and

17

unambiguous meaning of . . . subsection 1919(g)" (Medicaid). Compl. ¶¶ 66–67. The complaint also includes two separate jurisdictional bases—one for "Plaintiffs' challenge[] to the Final Rule as applied to Medicaid under the Medicaid Act claim," *id*. ¶ 46, and another for "Plaintiffs' challenge[] to the Final Rule as applied to Medicare," *id.* ¶ 47.

To be sure, courts have, in some circumstances, found that a plaintiff's Medicaid Act claim in fact has its "standing and substantive basis" in the Medicare Act. *See, e.g.*, *R.I. Hosp. v. Califano*, 585 F.2d 1153, 1162 (1st Cir. 1978) (finding no subject-matter jurisdiction over a Medicaid Act reimbursement claim where doing so would put the court "in the peculiar posture of hearing a case that consists entirely of a challenge to the limits promulgated under [the Medicare Act], when [the court is] expressly barred by [that Act] from entertaining that challenge"). For example, a court may find that the Medicare Act provides the basis for a nursing facility's challenge to the termination of its Medicaid provider agreement when "the sole reason for termination of [the] Medic*aid* provider agreement was the termination of [the] Medi*care* provider agreement for [the facility's] failure to comply with Medi*care* laws and regulations." *In re Bayou Shores SNF*, 828 F.3d 1297, 1330 (11th Cir. 2016) (emphasis in original). But when "faced with a case like

18

[Plaintiffs'] in which the gravamen" of the claim "can be said to arise under the Medicaid Act," that Act is the basis for the claim. *R.I. Hosp.*, 585 F.2d at 1162.

We thus agree with Plaintiffs that their Medicaid Act claim arises independent of the Medicare Act.

2. *Plaintiffs' Medicaid Act Claim Is Not Inextricably Intertwined with a Medicare Act Claim for Benefits or Compliance Determination*

The government suggests that Medicaid Act claims asserted by dually participating facilities are subject to the claim-channeling and jurisdiction-stripping provisions of the Medicare Act if they are inextricably intertwined with a claim for benefits. *See* Appellee's Br. at 25 ("[W]hen [the agency] imposes a remedy on a dually-participating facility, the facility may only administratively appeal that determination under the Medicare appeal procedures, which culminate in judicial review under § 405(g)."). Plaintiffs' claims here, however, are not "inextricably intertwined with what . . . is in essence a claim for benefits." *Heckler*, 466 U.S. at 624.

To the contrary, Plaintiffs seek to bring a pre-enforcement rulemaking challenge that does not involve any compliance determination that would trigger section 405(g)'s claim-channeling function. *See* 42 U.S.C. § 1395cc(h)(1) (channeling claims brought by facilities dissatisfied with a "determination");

42 C.F.R. § 498.3 (listing which agency decisions are considered "determinations" subject to section 405(g)'s claim-channeling procedures).

As the district court noted, the Sixth Circuit has held that Medicaid Act claims brought by dually participating facilities are channeled along with Medicare Act claims when the Medicaid Act claims are "'inextricably intertwined' with [a] substantive challenge to" a noncompliance determination. *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 363 (6th Cir. 2000). This is consistent with the Supreme Court's guidance that a claim should be channeled if it concerns "the lawfulness of [a] regulation or statute *upon which an agency determination depends*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 23 (2000) (emphasis added).[3]

---

[3] In *Shalala v. Illinois Council on Long Term Care, Inc.*, the Supreme Court channeled constitutional and statutory challenges to a Medicare regulation, reasoning that although "the agency might not provide a hearing for [those] particular contention[s]," the plaintiffs "remain[ed] free," after following the Medicare Act's administrative procedures, "to contest in court the lawfulness of any regulation or statute upon which an agency determination depends." *Id.* (emphasis omitted). The same logic applies to Medicaid Act claims involving the lawfulness of a regulation upon which an agency determination depends; "[t]o conclude otherwise would allow any party to avoid the Medicare Act's administrative procedures for reviewing the Secretary's determinations simply by making purely legal constitutional or statutory arguments." *Cathedral Rock*, 223 F.3d at 363. "Rather, a court must examine whether the allegedly collateral claim involves completely separate issues from the party's claim that it is entitled to benefits or continued participation in the Medicare program or whether it is inextricably intertwined with its substantive claim to benefits or participation." *Id.*

20

Here, no Plaintiff has raised a claim for benefits or is otherwise subject to a noncompliance determination, and there is no suggestion that resolution of the legal issue here will lead to a favorable decision on any claim for benefits or challenge to a noncompliance determination.[4] Instead, Plaintiffs contend that "[t]his pre-enforcement action is . . . critical to preventing HHS, and those acting in concert with it, from violating with impunity the registered-nurse requirement[]" of the Medicaid Act, because "such illegality is not redressable through post-enforcement proceedings." Compl. ¶¶ 109–10; *see, e.g., Perry Cnty. Nursing Ctr.*, DAB No. 2555, at 6 (2014) (legality of a survey team is not "reviewable in [an] administrative appeal proceeding"), *aff'd*, *Perry Cnty. Nursing Ctr. v. U.S. Dep't of Health & Human Servs.*, 603 F. App'x 265 (5th Cir. 2015).

We thus conclude that Plaintiffs' challenge to the Final Rule is not inextricably intertwined with a claim for benefits or a determination of noncompliance by the government.[5]

---

[4] Indeed, the recommendations of State agencies are not binding on HHS. For dually participating facilities, "[c]ertifications by the State survey agency represent recommendations," 42 C.F.R. § 488.12, and are "subject to the approval" of the Secretary, *id.* § 488.330(a)(1)(i).

[5] The government's reliance on the Sixth Circuit's decision in *Michigan Association of Homes & Services for Aging, Inc. v. Shalala*, 127 F.3d 496 (6th Cir. 1997), is unavailing. That case involved a section of the Medicaid Act that incorporates section 405(g) for "[a]ny intermediate care facility for the mentally retarded which is dissatisfied with a determination by the Secretary

### 3. *The Government's Policy Rationale Does Not Support Claim Channeling and Jurisdiction Stripping in This Case*

Finally, the government argues that Plaintiffs' Medicaid Act claim should be bootstrapped to their Medicare Act claim to prevent "an end-run around § 405(h)." Appellee's Br. at 24. This may be appropriate in cases where plaintiffs label what are clearly and exclusively Medicare Act claims as arising under the Medicaid Act in order to evade the Medicare Act's claim-channeling and jurisdiction-stripping provisions. *See, e.g.*, *Bayou Shores*, 828 F.3d at 1330 (holding that a nursing facility "cannot avoid the jurisdictional bar in § 405(h) by attempting to re-characterize its claim to [a] Medicaid provider agreement as separate from its claim to [a] Medicare provider agreement"). But bootstrapping is inappropriate here because Plaintiffs' Medicaid Act claim is colorable and arises independent of the Medicare Act for the reasons described above.

---

that it no longer qualifies as a[n] intermediate care facility for the mentally retarded for purposes of" the Medicaid Act. 42 U.S.C. § 1396i(b)(2); *see Mich. Ass'n*, 127 F.3d at 503 (considering "[t]he Medicaid Act's inclusion of § 405(g)" to be "clear textual support for the proposition that Congress intended the exhaustion of administrative remedies to apply" to challenges brought by dissatisfied nursing facilities). No Plaintiff here is an "intermediate care facility for the mentally retarded." 42 U.S.C. § 1396i(b)(2). More importantly, the inclusion of the claim-channeling provision for certain providers suggests that its exclusion for others, including nursing facilities, was deliberate. *See United States v. Naftalin*, 441 U.S. 768, 773–74 (1979) (rejecting that language from one statutory provision "should be read into" another provision, because "[t]he short answer is that Congress did not write the statute that way," and "the fact that it did not provides strong affirmative evidence" that the language applies only to the provision that includes it).

Even if there were "substantial doubt about [whether] congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 172 (2d Cir. 2006) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)). "In the absence of direction from Congress stronger than any [the government] has advanced, we apply the familiar default rule: Federal courts have § 1331 jurisdiction over claims that arise under federal law." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 387 (2012).

## III. CONCLUSION

For the reasons set forth above, the district court's judgment is reversed and remanded for further proceedings.